SPRINGFIELD GAS & ELECTRIC CO. v. BARKER, Atty. Gen., et al.

(District Court, W. D. Missouri, S. D.   July 6, 1915.)

No. 9.

1. ELECTRICITY ⬤⟶11—RATES—ESTABLISHMENT BY COMMISSION.
    A public service commission cannot base the establishment of rates by it on the fact that the reduction of electric service rates in a particular city would equalize conditions, so as to build up a profitable patronage and enable the company to produce a net return equal to that in another city where the new rates were in force.
    [Ed. Note.—For other cases, see Electricity, Dec. Dig. ⬤⟶11.]

2. ELECTRICITY ⬤⟶11—SUPPLY—TEMPORARY INJUNCTION.
    Where the valuation placed by a public service commission in fixing electric service rates on a number of large items was seriously contro-

verted, and it appeared that if the company's contention was correct the rates fixed were confiscatory, and it was doubtful whether the commission's findings were sufficient under the law, the difficulty the company would experience in collecting the increased rates for past services after the final hearing if the rate should be found confiscatory, and the fact that the consumers can be protected by requirement that accounts of collections be kept and an injunction bond given for the payment of the excess charges if the order of the commission be sustained, justifies the issuance of a temporary injunction restraining the enforcement of the commission's order pending the final hearing.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. ☞11.]

In Equity. Suit by the Springfield Gas & Electric Company against John T. Barker, Attorney General, and others, to restrain the enforcement of an order made by the Public Service Commission of the State of Missouri. Temporary injunction granted.

W. D. Tatlow, of Springfield, Mo., John M. Olin, of Madison, Wis., and Tatlow & Mitchell, of Springfield, Mo. (Olin, Butler, Stebbins. Curkeet & Stroud, of Madison, Wis., of counsel), for complainant.

William G. Busby, of Carrollton, Mo., and E. C. McAfee and T. Neville, both of Springfield, Mo., for defendants.

Before SANBORN, Circuit Judge, and POLLOCK and VAN VALKENBURGH, District Judges.

PER CURIAM. The defendants seek to restrain the enforcement of an order made June 23, 1914, by the Public Service Commission of the state of Missouri, fixing the value of complainant's property, conceived to be used and useful in the public service in supplying electric energy at Springfield, Mo., and the rates to be charged for electricity by complainant, on the stated ground that said rates are unreasonably low, and are based upon an unreasonable and illegal valuation of complainant's property, and on the further ground that the enforcement of said rates would deprive complainant of its property without due process of law, and would deny to it the equal protection of the laws, in contravention of the Constitution of the United States and of the Constitution of the state of Missouri; also on the still further ground that said commission, in fixing said rates, exceeded its powers under the Constitution and laws of the state of Missouri. The present hearing is upon motion for a temporary injunction; therefore we shall consider only so much of the issues presented as concern the propriety of the immediate relief prayed, reserving a determination of the merits for the final hearing of the cause. The power of the commission to establish just and reasonable rates, based upon a fair valuation of complainant's property after a full and fair hearing, such as the law guarantees, will be assumed.

The valuation fixed by the commission as a basis for determining reasonable and just rates was $300,000. The rate of return allowed was 7 per cent. Complainant insists that this rate of return is unreasonably low, and that the valuation fixed is less than one-half the actual value of the property used and useful in the business, and of the price paid therefor by complainant. Since the order of June 23,

1914, became effective, an actual test, covering a period of approximately eight months, has been made of the effect of these rates upon the business of complainant, monthly reports thereof have been filed with the commission, as required, and the results have been placed before the court.

The opinion and order of the commission discloses that it took the lowest of the computations, made by three several engineers, of the cost of reproduction new of the property involved, less depreciation, made substantial reductions thereon, and therefrom deduced an actual cost of reproduction, less depreciation, of $200,126. The fixed valuation of $300,000 was arrived at by the addition thereto of $100,000, because of "considering said plant as a going concern and taking into account the fact that said plant is in successful operation, and including engineering, supervision, and interest during construction, organization and general expenses, legal expenses, contingencies, insurance, general contractor's profit, promotion and other development expenses, working capital, and including all other elements of value, tangible and intangible, as used in the public service in supplying electric energy at Springfield." It is contended by complainant that this allowance for the various items thus recited is unreasonably low to the point of confiscation. The commission has made an omnibus allowance, without itemization in findings, opinion, or order. Hence it is impossible to test the reasonableness of its findings without such a comprehensive examination of the entire case as is impracticable upon a preliminary hearing of this nature. We turn, therefore, to such elements of disagreement as are presented in tangible and defined form upon the face of the proceedings.

[1] Especial emphasis is laid by complainant upon the following items disallowed by the commission: Steam power plant, $106,000; going value, $60,000 to $140,000; cash working capital, $20,000 to $25,000; managerial and legal expenses, $9,000 per year; new business expenses, $2,500 per year; expenses of the rate-making proceeding, approximately $50,000. It is practically conceded, and sufficiently appears, that if complainant is correct in its contentions respecting these several items the rate of return would be unreasonably low, and the order of the commission probably confiscatory, even upon the rate of return established by it. On the contrary, if all these items be disallowed, the percentage of net return would be so unusually high in comparison with that in a great number of cities presenting conditions sufficiently analogous for purposes of useful comparison as to cast a reasonable doubt upon the estimates and computations of the commission which could make such a result possible.

Replying to this suggestion at the argument, counsel for defendants sought to justify the order of the commission in this case upon the ground that a like rate is in force at Joplin, Mo., a city of almost the same population. Complainant asserts that the nature of the industries and business conditions at Joplin operate to produce a materially greater net return at Joplin than at Springfield. To this the defendants reply that the establishment of an identical rate at Springfield would tend to build up a profitable patronage at that place to such

an extent as to equalize industrial conditions in the two cities; but such a result must necessarily be theoretical and speculative. Commission action based upon such considerations invade the right of control and management incidental to ownership. In Northern Pacific Railway Company and Minneapolis, St. Paul & Sault Ste. Marie Railway Company v. State of North Dakota ex rel. T. F. McCue, Attorney General, 236 U. S. 585, 35 Sup. Ct. 429, 59 L. Ed. 735, the Supreme Court of the United States has said that it is beyond the power of the state to compel the establishment and maintenance of rates not otherwise reasonable in order to build up a local enterprise.

[2] It is apparent that, if the contentions of complainant be sustained in any substantial degree, the return upon its investment would fall short of a fair and reasonable return at the rate fixed by the commission itself. It further appears that such claims demand serious consideration. The court has been embarrassed, in its review, by the form of the decision and findings which enumerate, in general terms, the items included, but fail to specify the amount allowed for each.

Subsection 2 of section 78 of the Public Service Commission Act (Laws 1913, p. 616) provides:

"The commission shall make and file its findings of fact in writing upon all matters concerning which evidence shall have been introduced before it which in its judgment have bearing on the value of the property of the gas corporation, electrical corporation or water corporation affected. Such findings shall be subject to review by any circuit court of this state in the same manner and within the same time as other orders and decisions of the commission. The findings of the commission so made and filed, when properly certified under the seal of the commission, shall be admissible in evidence in any action, proceeding or hearing before the commission or any court, in which the commission, the state or an officer, department or institution thereof, or any county, city or municipality or other body politic and the gas corporation, electrical corporation or water corporation affected may be interested whether arising under the provisions of this act or otherwise, and such findings, when so introduced, shall be conclusive evidence of the facts therein stated as of the date therein stated under conditions then existing, and such facts can only be controverted by showing a subsequent change in conditions bearing upon the facts therein determined."

It may be doubted whether a decision and findings which state nothing but the total valuation fixed by the commission, without showing the amount allowed for each item included, would be a compliance with the manifest purpose of the law to permit the parties interested to test in court the questions involved. Under such circumstances, what is the duty of the court upon temporary hearing? In Newton v. Levis, 79 Fed. 715, 25 C. C. A. 161, the Court of Appeals announced the rule which prevails in this circuit:

"When the questions to be ultimately decided are serious and doubtful, the legal discretion of the judge in granting the writ should be influenced largely by the consideration that the injury to the moving party will be certain, great, and irreparable if the motion is denied, while the inconvenience and loss to the opposing party will be inconsiderable, and may well be indemnified by a proper bond, if the injunction is granted. A preliminary injunction maintaining the status quo may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted."

Counsel for defendants in their brief point out that, if its contention is sustained, complainant will seek to recover its losses by making charges against consumers in excess of the rates then in force. They say:

"After a final hearing, and these rates declared illegal, the complainant will be admirably situated to make such collections. Having a monopoly of the business, and power to discontinue the service at will, complainant has the whip hand and requires no aid from court to maintain its rights."

A sufficient answer to this argument is found in the fact that consumers of electricity are constantly changing, and that additional charges could scarcely be enforced against those who had not enjoyed the lower rate. Moreover the powers of complainant are not so absolute as this suggestion of counsel would imply. It would, in most cases, be put to its recovery at law, and this would involve a multiplicity of suits, such as it is the province of equity to prevent.

On the other hand, the injury to the moving party in this case will be certain, great, and irreparable if its motion be denied and its contentions ultimately sustained, while the inconvenience and loss to each consumer will be inconsiderable and may well be indemnified by a proper bond. A course of business that will insure a prompt refund of charges ultimately adjudged to be excessive may easily be prescribed in a case like this. The complainant offers, in place of the old 15-cent rate for residence lighting, to install rates not in excess of 10 cents per kilowatt hour, and the temporary injunction will be granted upon that condition. It will further be provided by the order that such a record shall be kept by the complainant, and such evidences of consumption and payment issued to the consumer that any excess due the latter may be readily computed and judicially determined. A bond in sufficient amount and with appropriate conditions will be exacted to insure compliance with the order made, and jurisdiction will be reserved in this court to adjudicate all claims which may be found to accrue from the granting of the temporary injunction prayed.

An order may be prepared in accordance with the views herein expressed.