In the Matter of the Application of THE YONKERS ELECTRIC LIGHT AND POWER COMPANY, Petitioner, for a Certiorari Order against MILO R. MALTBIE and Others, Constituting the Public Service Commission of the State of New York, and the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondents.

JOHN J. BENNETT, JR., Attorney-General of the State of New York, Intervenor.

Third Department, November 13, 1935.

*Shearman & Sterling [Colley E. Williams, William L. Ransom, Jacob H. Goetz* and *Neile F. Towner* of counsel], for the petitioner.

*Charles G. Blakeslee, Counsel to the Public Service Commission [John J. Donohue* and *Pincus M. Berkson* with him on the brief], for the respondents.

*John J. Bennett, Jr., Attorney-General [Charles E. McManus, Assistant Attorney-General,* of counsel], intervenor.

HILL, P. J.   A review under certiorari of a determination and order of the Public Service Commission requiring the petitioner, from and after November 10, 1934, to reduce all its electric rates six per cent, this to continue until permanent rates are fixed in a proceeding therefor now being conducted before the Commission. The Commission purported to act under new section 114 of the Public Service Law (Laws of 1934, chap. 287, in effect April 24, 1934).   The proceeding to fix permanent rates was commenced on October 11, 1932; the taking of testimony began June 19, 1933. The motion for temporary rates was made by the corporation counsel of the city of Yonkers on May 9, 1934.   The memorandum and decision of the Public Service Commission in the matter of temporary rates was dated October 22, 1934, and the order under review was made on the following day.   The new statute in part provides: " Said temporary rates so fixed, determined and prescribed shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property of said public utility company used and useful in the public service."   The Commission promulgated a definition at the beginning of the hearing to fix temporary rates.   The chairman said:

" I will state for the record that the Commission rules:

" 1. Original cost of the property of the respondent company shall mean the actual money cost (or the current money value of

any consideration other than money) at the time when said property was first devoted to the public service whether by the respondent company or by predecessor public utilities. If there is any indication that such cost was excessive or unnecessary, evidence in relation thereto will be received." (It is to be noted that the definition omits a correlative provision to be applied in the event there is " any indication " that the cost is less than the value.) The Commission purported to fix a rate founded on " original cost " as it defined that term. This did not include going value or working capital other than the value of the supplies on hand according to the books of the company. The amount fixed was substantially the amount of the company's fixed capital account, less two items aggregating about $500,000.

In the prevailing opinion in the most recent case decided by the Supreme Court of the United States (*West* v. *Chesapeake & Potomac Telephone Co.*, 295 U. S. 662) the court says concerning the elements to be considered in determining the amount upon which a public utility is entitled to earn a return, " We have therefore held that where the present value of property devoted to the public service is in excess of original cost, the utility company is not limited to a return on cost. Conversely, if the plant has depreciated in value, the public should not be bound to allow a return measured by investment. Of course the amount of that investment is to be considered along with appraisal of the property as presently existing, in order to arrive at a fair conclusion as to present value, for actual cost, reproduction cost and all other elements affecting value are to be given their proper weight in the final conclusion." (Citing *Los Angeles Gas & Elec. Corp.* v. *Railroad Commission of California*, 289 U. S. 287, 306.) Thus, to affirm this determination and order, we must decide that temporary rates under new section 114 may be fixed upon a rate base which, if adopted as to permanent rates, would be confiscatory.

" Nor did the fact that the orders of the Commission merely prescribed temporary rates to be effective until its final determination, deprive the company of its right to relief at the hands of the court. The orders required the new reduced rates to be put into effect on a given date. They were final legislative acts as to the period during which they should remain in effect pending the final determination; and if the rates prescribed were confiscatory the company would be deprived of a reasonable return upon its property during such period, without remedy, unless their enforcement should be enjoined." (*Prendergast* v. *New York Telephone Co.*, 262 U. S. 43, 49.) The Attorney-General and the attorney for the Commission point out that the new statute provides a remedy which

will safeguard the interests of the utility should it be determined later that the temporary rates were too low and confiscatory. The last paragraph of the new section (§ 114) contains this sentence: "The commission is hereby authorized in any proceeding in which temporary rates are fixed, determined and prescribed under this section, to consider the effect of such rates in fixing, determining and prescribing rates to be thereafter charged and collected by said public utility company on final determination of the rate proceeding." It is argued that this sentence permits the Commission, by fixing permanent rates above current requirements, to compensate the company if an adequate and reasonable return was not earned under the temporary rates. I do not adopt the construction urged. The sentence is more susceptible of a construction that the Commission may consider as evidence the experiences under the temporary rate in fixing a permanent rate that will be compensatory in the future without regard to past losses. However, I will adopt for the sake of the argument the construction urged. It was said in *Love* v. *Atchison, T. & S. F. R. Co.* (185 Fed. 321): "The legislative function in rate-making looks to the future and determines what future rates shall be. * * * It is as clear a violation of the Constitution, and one as promptly remediable in the national courts, to take the property of a railroad company without just compensation by the enforced operation of tentative rates during the process of their making as by the operation of final rates after that process is complete. Railroad companies that have been, are, or will be deprived of parts of their property devoted to the public use of transportation without just compensation during the continuance of the rate-making process by provisions of a State Constitution, or of a State law, or by orders of a State commission, prescribing tentative rates and putting them in effect during the rate-making process under severe penalties, may maintain suits for and obtain relief by injunction during the continuance of the rate-making process to the same extent that they may after the process is completed " (p. 327). And in *Springfield Gas & Electric Co.* v. *Barker* (231 Fed. 331, 335), in answer to an argument similar to that now presented on behalf of the Commission, it was said: "A sufficient answer to this argument is found in the fact that consumers of electricity are constantly changing, and that additional charges could scarcely be enforced against those who had not enjoyed the lower rate." And finally in *Oklahoma Natural Gas Co.* v. *Russell* (261 U. S. 290) it was said by the late Mr. Justice HOLMES of the United States Supreme Court: "Coming to the principal question, if the plaintiffs respectively can make out their case, as must be assumed for present purposes, they are suffering *daily* from confiscation under

the rate to which they now are limited. They have done all·that they can under the State law to get relief and cannot get it. If the Supreme Court of the State hereafter shall change the rate, even *nunc pro tunc*, the plaintiffs will have no adequate remedy for what they may have lost before the court shall have acted," and in this connection he cites with approval *Love* v. *Atchison, T. & S. F. R. Co.* (*supra*) and *Springfield Gas & Electric Co.* v. *Barker* (*supra*) and thus raises the arguments above quoted almost to the dignity of pronouncements of the Supreme Court of the United States. Justice HOLMES was speaking of the Oklahoma Constitution which gives to a utility an appeal to the Supreme Court of the State from a determination of the Commission, and empowers the court to act in a legislative capacity and to make new and retroactive rates if it be found that those made by the Commission should be reversed.

" Whenever the court, upon appeal, shall reverse an order of the Commission affecting the rates, charges, or the classifications of traffic of any transportation or transmission company, it shall, at the same time, substitute therefor such orders as, in its opinion, the Commission should have made at the time of entering the order appealed from; otherwise the reversal order shall not be valid. Such substituted order shall have the same force and effect (and none other) *as if it had been entered by the Commission at the time the original order appealed from was entered.*" (Constitution of Oklahoma, art. 9, § 23.) His above-quoted statement, " If the Supreme Court of the State hereafter shall change the rate, even *nunc pro tunc*, the plaintiffs will have no adequate remedy for what they may have lost before the court shall have acted," needs no explanation and establishes the rule that *nunc pro tunc* orders are not an adequate remedy for losses suffered before the entry of the order and seems determinative of the lack of legal effectiveness of the last paragraph of section 114 to undo the confiscatory rule as to valuation. And this even if we adopt the construction of the sentence urged on behalf of the Commission. Loss occasioned to the company by fixing an illegal rate base for temporary rates may not be compensated for by fixing rates in the future in excess of the current legal requirements.

Tentative rates pending the determination in a proceeding to fix permanent rates have, on many, possibly most, occasions been temporary in name only. This has been recognized as bearing upon the discretion to be exercised by a court in granting an interlocutory injunction. " If the Commission, however, had fixed an early date for the final hearing this might have been taken into consideration by the court as an element affecting the exercise of its discretion in the matter of granting an interlocutory injunction."

(*Prendergast* v. *New York Telephone Co., supra*, p. 50.) The danger of permitting a rate base for tentative rates to be determined by a formula and without regard to sound principles of law upon the theory that the rates will be operative for a brief period only, is shown in this case. The Commission's order fixing temporary rates became effective, except for the stay granted by the Special Term, on November 10, 1934, and was to continue until the termination of the proceeding to fix permanent rates which has now been pending for more than three years and the end not in sight.

It may be argued that the sole issue to be determined by a court in a review of this character is, whether there has been confiscation of petitioner's property, and that a decision and order should not be annulled because of improper methods or the receipt and consideration of evidence which, in a court of law, would be deemed incompetent ( *United States* v. *Abilene & Southern R. Co.*, 265 U. S. 274), and further that the burden of proof as to confiscation was upon the company. True, the burden was upon the company, but this company was in the anomalous position of having that burden and not being permitted to introduce evidence. In the permanent proceeding there already had been received evidence indicating a rate base nearly four and a half million dollars greater than that here fixed. Petitioner's offer of this evidence in the temporary proceeding was refused.

Holding the views I do, it is unnecessary to consider the other points raised.

The decision and order should be annulled, with costs.

RHODES and MCNAMEE, JJ., concur; HEFFERNAN, J., dissents, with an opinion in which BLISS, J., concurs.

HEFFERNAN, J. (dissenting). The petitioner, The Yonkers Electric Light and Power Company, is an electric corporation engaged in the distribution and sale of electricity for light, heat and power purposes to public and private consumers within the corporate limits of the city of Yonkers, Westchester county.

On October 11, 1932, the Public Service Commission, on its own motion, instituted the proceeding under review, wherein it undertook an investigation of the rates and charges of the petitioner. Hearings for the taking of testimony were opened on June 19, 1933. On May 9, 1934, the corporation counsel of the city of Yonkers moved the Commission to fix temporary rates pursuant to the provisions of section 114, which was added to the Public Service Law by chapter 287 of the Laws of 1934. The Commission held further hearings for the taking of testimony relating to the original cost of the petitioner's property, operating expenses, and revenues up to August 31, 1934. The Commission determined the original

cost of the physical property, less accrued depreciation, of the petitioner as of December 31, 1933, to be $14,373,000; estimated its net revenue for the year ending August 31, 1934, at $988,000; and allowed a return of slightly over six per cent on this value amounting to $872,000. The estimated revenue which the petitioner is receiving under its present rates exceeded this amount by $116,000.

There are but two issues presented to the court in this proceeding:

1. Did the Public Service Commission fix the temporary rates here under review in compliance with the provisions of section 114?

2. If the Commission fixed temporary rates in compliance with the provisions of said section 114, is section 114 of the Public Service Law constitutional?

The declared object of section 114 of the Public Service Law is " To facilitate prompt action by the Commission in proceedings involving the reasonableness of the rates of any public utility and to avoid delay in any such rate proceeding." To accomplish this object the Commission is authorized to require any utility " to establish, provide and maintain continuing property records " which will list all the physical property actually used in the public service, and show currently the original cost of the property and the reserves accumulated to provide for the retirement or replacement of the physical property.

The foregoing authorization enables the Commission to require utilities to keep the records and accounts therein enumerated whenever the same are deemed necessary or useful to facilitate prompt action in any rate proceeding where reasonableness of rates is involved. The subsequent provisions aim solely to facilitate prompt action and to avoid delay in fixing temporary rates pending the final determination of a rate proceeding. The provisions read as follows:

" The Commission may, in any such proceeding, brought either on its own motion or upon complaint, upon notice and after hearing, if it be of opinion that the public interest so requires, immediately fix, determine and prescribe temporary rates to be charged by said utility company pending the final determination of said rate proceeding. Said temporary rates so fixed, determined and prescribed shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property of said public utility company used and useful in the public service, and if the duly verified reports of said utility company to the commission do not show the original cost, less accrued depreciation, of said property, the commission may estimate said cost less depreciation and fix, determine and prescribe rates as hereinbefore provided.

" Temporary rates so fixed, determined and prescribed under this section shall be effective until the rates to be charged, received and collected by said utility company shall finally have been fixed, determined and prescribed. The Commission is hereby authorized in any proceeding in which temporary rates are fixed, determined and prescribed under this section, to consider the effect of such rates in fixing, determining and prescribing rates to be thereafter charged and collected by said public utility company on final determination of the rate proceeding."

It, therefore, follows that the temporary rates provided in this section may be established during any stage of a rate proceeding provided there is a compliance with the following conditions:

1. That there be a pending rate proceeding brought on Commission's own motion or public complaint.

2. That notice and hearing be given of motion to establish temporary rates.

3. That the Commission determine the original cost less accrued depreciation of physical property used and useful in the public service, by (a) duly verified reports of the utility company, or if such reports are not available, by (b) estimates of original cost less accrued depreciation.

4. That the temporary rates be sufficient to provide a return of five per centum upon the original cost less accrued depreciation of said physical property.

5. That the Commission be of opinion that public interest requires action.

In addition to the foregoing conditions precedent, the following conditions subsequent are also imposed:

1. Rates are to remain in effect only until final rates shall have been fixed and prescribed.

2. The Commission must consider the effect of temporary rates established under this section when establishing rates on final determination of the rate proceeding.

Prior to the enactment of section 114, the power of the Commission to fix temporary rates was limited by the statutory requirement that such rates be made " with due regard among other things to a reasonable average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies " (Pub. Serv. Law, § 72). The only point of difference between temporary and permanent rates which the courts recognized was the element of time, i. e., the duration that temporary rates were to remain in effect. The fixing of an early date for final hearing was an element the courts considered in favor of sustaining the validity of temporary rates. (*Prendergast* v. *New York Tele-*

*phone Co.*, 262 U. S. 43.) Otherwise, both temporary and permanent rates were alike in that they were final for the period they remained in effect and because of the finality of both temporary and permanent rates, the method of determining the rate base, and the rate of return was the same for both. (*Prendergast* v. *New York Telephone Co., supra; Matter of Rockland Light & Power Co.* v. *Maltbie,* 241 App. Div. 122.)

Section 114 substitutes a new method for fixing temporary rates. A comparison by way of illustration of the basic provisions of the new statute and the provisions of section 72 will show wherein the new method differs from the method for fixing temporary rates as set forth in section 72. Under section 72, rates, whether temporary or permanent, cannot validly be established until the Commission has weighed and considered all the facts relevant to a determination of a fair return on present value. (*Matter of New York Edison Co.* v. *Maltbie,* 244 App. Div. 436.) In practical effect, this requires the consumer to pay the old rates during the pendency of the rate proceeding until such time as permanent rates are established. Moreover, gains or losses resulting from excessive or inadequate temporary rates, which are final for the period of their duration, cannot affect the fixation of the permanent rates thereafter to be charged.

In fixing temporary rates under section 114 the Commission is limited to a consideration of original cost less accrued depreciation. Both these elements are definite, certain and easily ascertainable either from the records of the company or, if such records are not available, through estimates. The primary object of this section is to facilitate prompt action so that temporary rates may be established at the outset rather than at the end of a rate proceeding. As a result of this change in procedure, the consumer will have the benefit of any reduced rates to which he may be entitled from the earliest possible date. In so far as section 114, by its adoption of original cost less accrued depreciation as a temporary rate base, facilitates the prompt and immediate establishment of temporary rates, it is in the public interest.

Under section 72 the utility company is entitled to a " reasonable average return." It was said by Mr. Presiding Justice HILL, speaking for this court in the *New York Edison Case (supra),* that " the language of the statute [*i. e.*, section 72] does not empower the Commission to ' average ' the returns of past years with present. As used in this section ' average ' means conformity to prevailing standards, a middle point between two extremes, not the highest rate of return nor yet the lowest, but a return that is in keeping with the common run of returns of the period involved." Section

114, on the other hand, empowers the Commission to average the return resulting from temporary rates with the rates to be prescribed in the final determination. The "period involved" under the new statute extends to the entire rate-making period. Under section 114 the status of temporary rates is not fixed until the final determination. When fixed, the final rates embrace results arising from temporary rates and, therefore, relate back to the date when they first came into effect.

By section 114 the power is given to the Commission to correct errors in temporary rates fixed in accordance with its provisions and safeguards the utility by preventing any loss of legitimate revenues during the effective period of such rates.

Under section 72, temporary and permanent rates are alike in that both permanent and "temporary rates fixed by the Commission are final legislative acts as to the period during which they are to remain in effect." (*Matter of Rockland Light & Power Co.* v. *Maltbie*, 241 App. Div. 124.) The status of temporary rates is fixed from the date they first go into effect and remain final and conclusive as to the rights of both the utility company and the consumer until there are substituted therefor permanent rates. Section 114, however, requires the Commission to consider the effect of temporary rates on the earnings of a utility in arriving at its determination of final rates to be charged in the future. By this provision, if the Commission finally determines that the utility was not earning a fair return under the temporary rates so fixed, it must adjust the final rates so as to permit the utility to recoup any loss it sustained during the pendency of the proceeding. The temporary rates so fixed, determined and prescribed must be sufficient to provide a return of not less than five per cent upon the original cost, less accrued depreciation of the physical property of such public utility company used and useful in the public service. What elements of value the Commission may consider when it fixes temporary rates under the provisions of section 114 are distinctly and unequivocally set forth therein. It has no authority or power to establish them on the reproduction cost of the property used by the utility whether it be greater or less, but it must fix temporary rates solely upon the original cost, less accrued depreciation, of the physical property used and useful. Only when such original cost or accrued depreciation is not shown on the duly verified reports of the utility company filed with the Commission may it exercise any discretion in this matter. In such event, the Commission has been empowered to and may estimate such original cost.

The petitioner maintains that the Commission wholly omitted consideration of going value and allowed only a limited allowance

for working capital. It further argues that, if section 114 permits a rate base finding without those two elements, it is confiscatory, violating State and Federal Constitutions.

The record discloses, however, that the Commission exercising its own judgment determined that, under existing conditions, the temporary rate base included a sufficient allowance for working capital. It refused to accept the claim for working capital advanced by petitioner. The Commission's determination of what working capital is necessary for the conduct of its business under the circumstances disclosed here is a question of fact and unless clearly erroneous must be sustained by the court. (*Niagara Falls Power Co.* v. *Water Power & Control Commission*, 267 N. Y. 265.)

It would serve no useful purpose to analyse all the items which petitioner contends should have been taken into consideration in arriving at its rate base. On the record before us the Commission determined that the amount upon which the petitioner is entitled to a return for the purpose of determining temporary rates does not exceed $14,373,000. In the absence of a clear and conclusive showing that this amount is inadequate, the Commission's determination of this matter should be sustained. (*Cumberland Telephone & Telegraph Co.* v. *Louisiana P. S. Comm.*, 283 Fed. 215; *Prendergast* v. *New York Telephone Co.*, 262 U. S. 43.)

Petitioner also contends that the Commission erred in failing to make a finding that the public interest required a fixation of temporary rates under section 114. There is nothing in the statute which requires the Commission to proceed in any certain way in determining any particular fact. This section gives the Commission the power and discretion to determine this matter, and in the absence of a clear showing that such determination was arbitrary or capricious, the court should not interfere. (*Bronx Gas & Electric Co.* v. *Maltbie*, 268 N. Y. 278.) Petitioner presented no evidence that the public interest did not require the immediate fixation of temporary rates.

We are satisfied that the Commission proceeded in accordance with the provisions of section 114 of the Public Service Law in fixing and prescribing the temporary rates to be charged by petitioner. Petitioner's claim that in so doing the Commission acted arbitrarily and capriciously is without merit. The determination cannot be deemed arbitrary because it is not permanent. In arriving at its conclusion the Commission evidently took into consideration all the evidence developed to the date of the final hearing. Petitioner was given notice of the proceedings and was afforded every opportunity to be heard. In fact petitioner was heard on fifty-seven occasions before notice was served upon it that a temporary rate would be made based upon the evidence produced at those hearings.

On the question of constitutionality it is a firmly established presumption that a statute duly enacted by the Legislature is valid and constitutional (*Sage* v. *City of Brooklyn*, 89 N. Y. 189), and the burden of showing that it is unconstitutional rests upon the party asserting it. (*People* v. *N. Y. Carbonic Acid Gas Co.*, 196 N. Y. 421.) This must be shown conclusively (*People ex rel. Darling* v. *Warden of City Prison*, 154 App. Div. 413) and beyond all reasonable doubt. (*Ogden* v. *Saunders*, 12 Wheat. 213; *Matter of Kings County Lighting Co.* v. *Maltbie*, 244 App. Div. 475.)

Petitioner argues that the allowance of a return upon no more than the estimated original cost of used and useful property amounts to a taking of its property without just compensation which is unconstitutional even if authorized by statute. In support of this contention petitioner relies on *Matter of New York Edison Co.* v. *Maltbie* (244 App. Div. 436); *Matter of Rockland Light & Power Co.* v. *Maltbie* (241 id. 122); *Prendergast* v. *New York Telephone Co.* (262 U. S. 43) and *West* v. *Chesapeake & Potomac Telephone Co.* (295 U. S. 662, decided June 3, 1935).

*Matter of New York Edison Co.* v. *Maltbie* (*supra*) and *Matter of Rockland Light & Power Co.* v. *Maltbie* (*supra*) involved the validity of temporary rates fixed by the Commission under the provisions of section 72 of the Public Service Law; and in each of them it was held that temporary rates fixed by the Commission are final legislative acts as to the period during which they are to remain in effect. This holding was in accordance with that made by the United States Supreme Court in *Prendergast* v. *New York Telephone Co.* (*supra*).

The provisions of section 114 are totally different from those of section 72 under which the *Rockland* and *Edison* cases arose. There was no attempt under section 72 to take into consideration the effect of temporary rates. Section 114 makes provision for recoupment in the event that the effect of a temporary rate is to deprive a company of a fair return. If there were no other difference between the two statutes this distinction alone would be more than ample to make the *Rockland* and *Edison* cases inapplicable here. But this is not the only dissimilarity between the two statutes. Section 114 regards the temporary rate as a step in the rate-making proceeding, the effect of which is not irrevocable. Section 72 on the other hand authorizes " an immediate, reasonable, temporary increase or decrease in such price pending a final determination of the price to be thereafter charged by such person or corporation." So far as section 72 is concerned, temporary rates are an end in themselves, bearing no relation to the permanent ones to be fixed. It is apparent, therefore, that the two statutes have different objectives and use unlike methods in achieving their ends.

In the *Prendergast Case* (*supra*) the court reviewed an order of the Public Service Commission, which temporarily reduced the rates charged by the New York Telephone Company, pending a determination of final rates. These temporary reductions were made pursuant to the provisions of section 97 of the Public Service Law. An examination of that section discloses the fact that its language is, to all practical intents and purposes, identical with that used in section 72 of the Public Service Law in authorizing this Commission to establish temporary rates for gas and electric corporations. The United States Supreme Court affirmed the order of the District Court enjoining the enforcement of the temporary rates ordered by the Commission.

A study of the court's opinion in the *Prendergast Case* (*supra*) discloses that the injunction against the enforcement of the temporary rates ordered by the Commission was affirmed for two reasons:

1. The temporary rates were final and conclusive during the effective period.

2. That unless enjoined, the company would be without remedy.

As stated by the court (at p. 51): " The company meanwhile could only be protected from loss by injunction; while, on the other hand, its subscribers were protected by the bond which was required for the return of the excess charges collected if the injunction should be thereafter dissolved. There was no necessity in the particular situation presented for any test period of the new rates."

But the situation now presented is of an entirely different nature. Here there is a necessity for test periods of new rates. Here the company is amply protected against loss arising from the temporary rates.

As has been pointed out, temporary rates prescribed by the Commission under section 114 are *not* final and conclusive. If it be determined, after full and complete hearing, that the petitioner was deprived of an adequate return on the present value of its property during the effective period of temporary rates, the Legislature has commanded that the Commission make provision in the rates finally prescribed so as to permit the company to recoup the amount of this loss. Under these circumstances the utility cannot suffer any confiscation of its property.

In the *West* case the court held invalid permanent rates fixed by the Maryland Public Service Commission on a rate basis arrived at through the use of general commodity indexes of price trends. In the course of its opinion the court said: " When the property itself is taken by the exertion of the power of eminent domain, just compensation is its value at the time of the taking. So, where by

legislation prescribing rates or charges the use of the property is taken, just compensation assured by these constitutional provisions is a reasonable rate of return upon that value [citing cases]." Thus, in the *West* case, the United States Supreme Court held that a utility is entitled to a reasonable rate of return upon the value of its used and useful property in the same manner as a person is entitled to just compensation for property taken by the exercise of the power of eminent domain. But the court does not hold that money paid for the use of the utility's property or the money paid for property taken by eminent domain must be paid at once. When property is taken by the exercise of the power of eminent domain, the money to compensate the owner therefor is not paid at the time of such taking. As long as he is assured of receiving its value, his property is not confiscated. (*People* v. *Adirondack R. Co.*, 160 N. Y. 225.) So also, as long as a utility is assured, under the law, of obtaining a reasonable rate of return on the value of its property either now or in the reasonably immediate future, for the entire period of its use there can be no confiscation.

Because of the fact that section 72 of the Public Service Law failed to guarantee a reasonable rate of return on the value of a utility's property during the entire period of its use, all elements of value had to be considered, and it was impossible as a practical matter to make an effective temporary rate pursuant to its provisions. Temporary rates prescribed in compliance with the terms of that section were final, perhaps only for a time, but final during the period they were in effect. If these temporary rates were inadequate, the utility could never obtain the revenue of which it had been deprived. It was mainly to remedy this defect that section 114 was enacted by the Legislature. This section gave to the Commission power to make temporary rates on a readily ascertainable value. But it did more than this. It guaranteed that, in the event it were finally established that such temporary rates were inadequate, the utility would be reimbursed to the extent necessary to recoup or make up this temporary loss.

The fact that some consumer may be prejudiced by the fixation of either temporary or permanent rates is not an argument available to petitioner. It is firmly settled that a party will not be heard by a court to question the validity of a law or any part thereof, unless he causes it to appear that a right of his is infringed. (*People ex rel. Doscher* v. *Sisson*, 222 N. Y. 387.)

The Legislature could not, even for a temporary period, permanently deprive a utility of a fair return on the fair value of its property. As petitioner states, a utility is entitled to a fair return upon the fair value of its property devoted to the public service

during the entire period of its use. The real question here presented is whether the Legislature, under section 114 of the Public Service Law, has guaranteed to the utility such a return or whether this section would permit the confiscation of the property used in the rendition of public service.

One of the main contentions of petitioner is that the Legislature has failed to erect a valid standard for the Commission's action. It asserts that the only valid standard for rate making is that rates be reasonable and assure just compensation to the utility. It also argues that any standard which fails to satisfy these requirements is unconstitutional and void. We agree with these contentions.

The question is whether this standard, so definitely fixed by the Legislature, would result in a confiscation of petitioner's property. As has been heretofore stated, an examination of section 114 of the Public Service Law clearly shows that the Commission is not authorized to and cannot confiscate any property of the utility.

This section first requires the Commission to determine that, in its opinion, public interest requires an immediate fixing and prescription of temporary rates to be charged by a utility pending final determination of a rate proceeding. It then provides that such temporary rates shall be sufficient to provide a return of not less than five per cent upon the original cost less depreciation of the used and useful physical property of the public utility. And, finally, the Legislature commands the Commission, on the determination of permanent rates, to adjust these final rates so that a utility will have earned a fair return during the entire rate-making period and will continue to receive a fair return upon the fair value of its property. This fair value must be found in accordance with the provisions of section 72 of the Public Service Law, and the rates must be just and reasonable under all existing facts and circumstances.

Obviously no action of the Commission under the authority of this section can possibly result in a confiscation of the utility's property. If the Commission exercises the power granted to it under section 114 and fixes temporary rates reducing the rates charged by the utility (under the section it may also increase such rates), the company is, of course, deprived of a certain amount of revenue during the effective period of such temporary rates. But it is not deprivation of revenue itself which would render the statute unconstitutional as confiscatory. There can be no confiscation under any law unless this deprivation permanently deprives a person of property and compensation therefor. That is what the Constitution says cannot be done, and the Commission would not be heard to argue in this court that it had authority, or that the

Legislature could give it authority, so to do. A utility is entitled to a fair return upon the present value of its used and useful property during the entire period of its use and it cannot be permanently deprived of any of this revenue even for a temporary period. It was only to satisfy this constitutional requirement and the essentials of equity and justice that section 114 was enacted by the Legislature. So, too, if it be finally determined that under the temporary rates fixed by the Commission pursuant to section 114, a utility has been deprived of a fair return on the fair value of its property during their effective period, the Commission must adjust the final rates in a manner that will reimburse the utility for the loss suffered.

Finally, petitioner asserts that the statute in question cannot validly be construed to require future recoupment for present confiscation. It seems to us that petitioner is unduly apprehensive that the Commission may abuse its power. True the language of the statute is permissive and not mandatory. It is not our province, however, to pronounce anticipatory judgments or to assume in advance that the Commission will disregard its plain duty. (*Lawrence* v. *St. Louis-San Francisco R. Co.*, 274 U. S. 588; *Tanner* v. *Little*, 240 id. 369.) If the Commission should fail to consider the effect of the temporary rates in making its final determination it will be time enough for petitioner to ask the court to intervene. The mere fact that the language of the statute is permissive rather than mandatory does not warrant its condemnation as unconstitutional. (*United States* v. *Illinois Central R. R. Co.*, 291 U. S. 457.)

Petitioner has failed to sustain the burden of showing the unconstitutionality of this statute or of showing that the Commission has failed to follow it in making its temporary rate order.

The determination should, therefore, be confirmed, with fifty dollars costs and disbursements.

BLISS, J., concurs.

Determination and order of the Public Service Commission annulled, with fifty dollars costs and disbursements.