In the Matter of the NEW ROCHELLE WATER COMPANY, Petitioner, v. PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, March 13, 1972.

Tanner & Friedman (Arthur S. Friedman and Michael J. Golden of counsel), and Albertson, Simmons & Butler for petitioner.

Peter H. Schiff (Joel Yohalem and Frank S. Robinson of counsel), for respondent.

HERLIHY, P. J. On May 19, 1970 the petitioner in this proceeding, New Rochelle Water Company, filed proposed new rates and schedules with the respondent Public Service Commission (hereinafter referred to as the Commission) pursuant to article 4-B of the Public Service Law (this article specifically applies to the regulation of water companies). The revised rate schedule would have produced additional revenues of about $2,027,400. The Commission, by an order dated June 16, 1970 suspended the proposed rates pursuant to subdivision 10 of section 89-c of the Public Service Law prior to their taking effect. (All statutory references hereinafter are to the Public Service Law unless otherwise stated.) The suspension postponed the effective date of the proposed rates for 120 days.

On August 20, 1970 petitioner requested that temporary rates be set and on September 30, 1970 the Commission permitted temporary rates designed to produce a rate of return of 5.5% to go into effect. The increase in revenues permitted by the temporary rate would be $514,000 per year. The prior rate of return was about 2.95% under which the petitioner was actually operating at a loss. On October 13, 1970 the Commission exercised its powers pursuant to subdivision 10 of section 89-c to suspend the effective date of the petitioner's new rates for an additional six months (until April 16, 1971) unless a final

determination should be sooner issued. In fact, the final determination to which petitioner objects was issued on April 8, 1971, wherein a permanent rate giving rise to $1,067,900 additional revenue and yielding a rate of return of 7.6% was approved. Petitioner does not object to the rate of return which the Commission found to be fair and reasonable.

Among other things, the petitioner contends that insofar as a temporary increase granted by the Commission during the suspension period was less than the final increase granted, it is entitled to reparations[1] or recoupment from its consumers as of right, pursuant to section 113. The hearing officer recommended reparations be granted to New Rochelle pursuant to section 113 of the Public Service Law, representing the difference between the revenue received under the temporary rates and that which would have been received under the recommended permanent rates. The Commission in denying the same stated " there is no basis in law for requiring reparations in the case of temporary increases during a suspension period. Since no extraordinary justification has been shown in this case, we do not deem the granting of reparations to be appropriate and the request of the company will be denied."

In 1930 section 113 of article 6 was enacted (L. 1930, ch. 790) and it provided that, as to newly filed rates which went into effect while the Commission was conducting hearings, the Commission could direct refunds of any part of such increase found to be excessive to the persons who paid such increase for a period of two years prior to the establishment of the final rate. As so enacted section 113 did not directly relate to refunds where temporary increases were directed during the course of a hearing as to a newly filed tariff or as to excess charges pursuant to prior rates then in effect, but later determined excessive in proceedings pursuant to section 89-i or subdivision 4 of section 89-c. It is fair to state that the precise application of section 113 as it existed from 1930 to 1970 was never considered by the appellate courts of this State. (Cf. *Purcell* v. *New York Cent. R. R. Co.*, 268 N. Y. 164, 172.)

---

1. "Reparations", as used in this case, refer to the difference between the revenue received under the temporary rates and that which would have been received under the permanent rate ultimately approved by the Commission. In this case petitioner claims reparations of approximately $314,600.

By chapter 271 of the Laws of 1970, section 113[2] was substantially amended to provide for refunds to consumers not only when a proposed rate is in effect pending the final determination of the Commission, but also when a temporary rate increase is granted by the Commission. This amendment also, for the first time in any part of the Public Service Law, specified that when temporary rates authorized by the Commission are found inadequate the Commission "may * * * authorize appropriate reparation to the company". (The statute does not define "reparation.") Petitioner contends that, pursuant to the unambiguous words of section 113 as amended, it is entitled to reparations of $314,600 representing the difference between the revenue received under the temporary rate and that which would have been received under the 7.6% rate of return which the Commission ultimately approved.

The Commission contends that since the provisions of article 4-B contained a provision for a temporary rate and/or suspension (see section 89-j) section 114 or section 113 of article 6 would not apply as to recoupment or reparation. However, all that the provisions of article 4-B do is to authorize a temporary rate, the provisions of section 114 becoming then applicable and actually supplementing such authorization as well as the provisions of section 113 as amended in 1970. It is now too well established that a utility is not to suffer known confiscation to permit a statutory construction which would or could defeat or

---

2. Public Service Law

"§ 113. Reparations and refunds; actions.

"Whenever a public utility company, on its own initiative shall file with the commission a schedule stating an increased rate or charge, and the commission shall enter upon a hearing concerning the propriety of such increased rate or charge, the commission shall by order require the interested company to keep accurate account during the pendency of the hearing, in detail, of all amounts received by reason of such increase, *or by reason of an increase received as a result of the establishment of temporary rates* * * * and upon completion of the hearing and decision may, on application, by order require the interested company to refund * * * such portion of such increased rates * * * as by its decision shall be found not justified *and, in the case of temporary rates, may* * * * *authorize appropriate reparation to the company if such temporary rates were found inadequate*" (italics represent the language inserted by the 1970 amendment). (For "Legislative Memoranda", see 2 McKinney's Sess. Laws of N. Y., 1970, p. 2888; "Governor's Memoranda", 2 McKinney's Sess. Laws of N. Y., 1970, p. 3083.)

impair such rule (*Prendergast* v. *New York Tel. Co.*, 262 U. S. 43, discussed *infra*). The Commission further contends that the amendment to section 113 was intended to permit the consumer to obtain a refund in cases where a temporary increase effective during the suspension period turned out to be greater than the ultimate permanent rate authorized by the Commission but that, in view of the structure and legislative history of the Public Service Law, reparations were not intended to be paid to utilities for losses suffered during the ten-month suspension period. With these contentions we cannot agree.

It has been firmly established that the Commission has the power to suspend proposed new rates for the maximum statutory period of 10 months. The history of this statutory authority also demonstrates that any loss sustained by the utility during this period had to be borne by it as a necessary incident of rate regulation.[3] Under section 113 as amended, however, the utility need no longer suffer such loss. The statute clearly states that reparations to the utility may be authorized if in the discretion of the Commission such order would be appropriate (see *Matter of Long Is. Water Corp.* v. *Swidler,* 38 A D 2d 1002 [decided herewith]). The Legislature, by the 1970 amendment to section 113 has created in the Commission the discretionary power[4] to order reparations to be paid where the temporary rate increases are found inadequate.

---

3. Section 89-c specifically provides that during any suspension period authorized therein the prior rates will be in effect unless a temporary rate is authorized by the respondent pursuant to section 89-j. Section 89-j by its terms refers to complaints presented pursuant to section 89-i and to proceedings pursuant to subdivision 4 of section 89-c, both of which statutory provisions relate solely to proceedings in regard to present rates in effect and proceedings related thereto. Section 89-i provides that a water works corporation supplying water may make a complaint, among other things, as to rates.

4. Petitioner has urged this court to hold that the language of amended section 113 makes reparations mandatory. However, the general statutory scheme of article 6 does not indicate that the word "may" as used creates anything but a permissive power to order reparations. (*People ex rel. Bloy* v. *Walker,* 113 Misc. 592, 593.) We cannot change the clear meaning of the plain language of the statute. (*Matter of New York Tel. Co.* v. *Public Serv. Comm.,* 309 N. Y. 569, 580.) (See McKinney's Cons. Laws of N. Y., Book 1, Statutes, pp. 188, 352-353.)

Petitioner contends, in the alternative, that section 114 entitles it to reparations as a matter of law.[5] The last paragraph of that section (the so-called recoupment provision) does create the duty to return to the utility any loss suffered under a temporary rate *decrease* (*Staten Is. Edison Corp.* v. *Maltbie,* 267 App. Div. 72, affd. 292 N. Y. 611), however, that section does not apply where, as here, there was a temporary rate *increase* pending approval of the rate filed by the utility. The recoupment clause was passed in direct response to the decision in *Prendergast* v. *New York Tel. Co.* (*supra*). That case held that, where the Commission instituted proceedings against a utility on its own motion or upon complaint and ordered temporary rate reductions pending an investigation, such temporary rates could be confiscatory and violative of due process and, therefore, recoupment of losses suffered during the effective period of temporary rates was necessary in order to render the rate-making statute constitutional. Thus section 114 authorizes the Commission to "consider the effect of * * * [temporary rates] in fixing, determining and prescribing [permanent] rates." As Justice HEFFERNAN stated: "By section 114 the power is given to the Commission to correct errors in temporary rates fixed in accordance with its provisions and safeguards the utility by *preventing any loss of legitimate revenues during the effective period of such rates.*" (*Matter of Yonkers Elec. Light & Power Co.* v. *Maltbie,* 245 App. Div. 419, HEFFERNAN, J., dissenting, pp. 424, 428; emphasis added). The problem presented in the *Prendergast* case and solved by the recoupment clause of section 114 is not present in this case, since we are here dealing with a temporary rate *increase.* Indeed, there are no reported cases in which section 114 was applied that do not involve temporary rate *reductions.* (See *Matter of Consolidated Edison Co. of*

---

5. § 114. Temporary rates. * * *

The commission may * * * [in a proceeding involving reasonableness of rates] brought either on its own motion or upon complaint * * * after hearing, if it be of opinion that the public interest so requires, immediately fix, determine and prescribe temporary rates to be charged by said utility company pending the final determination of said rate proceeding. Said temporary rates so fixed * * * shall be sufficient to provide a return of not less than five per centum * * *

"Temporary rates so fixed * * * shall be effective until the rates to be charged, received and collected by said utility company shall finally have been fixed * * * The commission is hereby authorized in any proceeding in which temporary rates are fixed * * * to consider the effect of such rates in fixing * * * rates to be thereafter charged and collected by said public utility company on final determination of the rate proceeding.

*N. Y.* v. *Maltbie,* 275 App. Div. 475, revd. 300 N. Y. 196, mot. for rearg. den. 300 N. Y. 645, app. dsmd. 339 U. S. 973; *Matter of Consolidated Edison Co. of N. Y.* v. *Maltbie,* 275 App. Div. 731, revd. 299 N. Y. 172; *Staten Is. Edison Corp.* v. *Maltbie,* 267 App. Div. 72, affd. 292 N. Y. 611; *Matter of Yonkers Elec. Light & Power Co.* v. *Maltbie,* 245 App. Div. 419, revd. 271 N. Y. 364; *County Transp. Co.* v. *Maltbie,* 273 App. Div. 437.)

Thus, both of appellant's contentions in support of a right to reparations fail to demonstrate error in the determination of the Commission. Section 114 is applicable only where a complaint is made against a utility or the Commission acts on its own motion to set a temporary rate *reducing* the then existing rate charged by the utility. In such a case the utility would be entitled to recoupment where the temporary rate was too low in light of the final determination, otherwise the determination might result in confiscation. (See *Prendergast* v. *New York Tel. Co.,* 262 U. S. 43, *supra*; *Matter of Bronx Gas & Elec. Co.* v. *Maltbie,* 271 N. Y. 364, 373, 374.)

Amended section 113, on the other hand, applies to the proceeding where the utility itself seeks a temporary rate *increasing* the existing rate during a suspension period and pending a final determination as to the reasonableness of the increased rates originally filed by the utility. In such instance, the statute authorizes the Commission, in the exercise of its discretion, to order reparations to the utility or refunds to consumers, depending on the facts and circumstances of the individual case as they appear in the final rate determined by the Commission.

Petitioner raises a further issue as to certain adjustments which the Commission made in ascertaining the dollar amount of the permanent rate increase. While courts do not ordinarily interfere with factual determinations of the Public Service Commission (48 N. Y. Jur., Public Utilities, § 56), we must in this case, as there is no evidence in the record to support the determination of the Commission. (See *Matter of Attorney-General of State of N. Y.* v. *Lundy,* 34 A D 2d 698, 699; *Matter of Town of Hempstead* v. *Public Serv. Comm. of State of N. Y.,* 56 Misc 2d 1098, 1100, affd. in *Matter of Village of Rockville Centre* v. *Public Serv. Comm. of State of N. Y.,* 30 A D 2d 1013, mot. for lv. to app. den. 23 N Y 2d 645.) It was error to attribute $164,300 in revenues to a newly constructed water facility which all the evidence indicated would be nonrevenue producing. By excluding this adjustment the Commission effectively deprived petitioner of that much revenue. As to the other item which was excluded, we find substantial evidence to

support that adjustment, the objections of petitioner being without merit.

By our decision herein we recognize that amended section 113 creates a right to reparations which does not require " extraordinary justification " and to that extent we disagree with the opinion and order of the Commission dated April 8, 1971. However, the language of the statute is permissive and must be construed as creating in the Public Service Commission discretion as to when reparations are appropriate in light of final rate determinations. There is, therefore, no absolute statutory right to reparations. If the Legislature had intended to create such a right it could have employed the method used in the recoupment clause of section 114, and required the Commission to take into consideration the experience of the utility under the temporary rate in setting the final rate. This requirement, however, was not included in section 113 as amended. On the record in the instant case we cannot say that the Commission's refusal to allow reparations was arbitrary, capricious, or an abuse of discretion.

The determination should be modified, on the law, so that part which determined petitioner's prospective revenue to include $164,300 attributable to increased capacity should be deleted and adjustment made to the permanent rate to reflect an adjusted test year revenue of $3,294,300 and, as so modified, confirmed with costs.

STALEY, JR., COOKE, SWEENEY and SIMONS, JJ., concur.

Determination modified, on the law, so as to delete that part which determined petitioner's prospective revenue to include $164,300 attributable to increased capacity, and adjustment made to the permanent rate to reflect an adjusted test year revenue of $3,294,300, and, as so modified, confirmed with costs.