*400
 
 Jasen, J.
 

 These two appeals present the common question of whether the respondent, Public Sevice Commission (Commission), acted within its powers in denying appellants’ request to apply permanent rate increases retroactively to permit the public utilities to recoup from consumers the difference in revenues between the final rates and lower temporary rates which the Commission put into effect after it suspended proposed rate increases filed by the utilities.
 

 On May 19, 1970, the New Rochelle Water Company (hereinafter referred to as NRW) filed proposed rate increases with the Commission pursuant to article 4-B of the Public Service Law which specifically applies to the regulation of water companies. The revised rate schedule would have produced additional revenues of about $2,027,400, and yield a rate of return of approximately 8.95%. The prior rates produced a return of about 2.95%. Prior to the filed rate taking effect, the Commission suspended the proposed rate increases for 10 months pursuant to subdivision 10 of section 89-c of the Public Service Law.
 

 On August 20,1970, NRW requested temporary rate increases, and on September 30,1970, the Commission granted temporary
 
 *401
 
 rates designed to produce a rate of return of 5.5% resulting in an increase of the utility’s revenues by $514,000 per year. The Commission issued its final determination on April 8, 1971, in which it approved permanent increased rates generating additional revenues of $1,067,900 per year and yielding a rate of return of 7.6%. NEW agrees that the permanent rates are fair and reasonable.
 

 By this article 78 proceeding, NBW challenges that portion of the Commission’s determination which denied retroactive application of the increased permanent rates for the period its proposed rate increases were suspended, and denied a revenue allowance for estimated future tax increases resulting from the construction of certain “ backbone ” facilities which did not appear on the tax assessment rolls during the test period.
 

 The Commission’s hearing officer recommended that reparations, representing the difference between the revenue received under the temporary rates and that which would have been received under the increased permanent rates which he recommended, be granted to NBW pursuant to section 113 of the Public Service Law. The hearing officer did not recommend retroactive application of the final rates to the portion of the suspension period
 
 prior
 
 to the time the temporary rates were allowed. In denying retroactive application of the final rates to any portion of the suspension period, the Commission stated, “ there is no basis in law for requiring reparations in the case of temporary increases during a suspension period. Since no extraordinary justification has been shown in this case, we do not deem the granting of reparations to be appropriate and the request of the company will be- denied.” The Commission also denied NBW’s request for a revenue allowance of $200,000 for estimated future real property and special franchise taxes resulting from construction of certain “ backbone ” facilities which did not appear upon the tax assessment rolls during the test period, upon the ground that an allowance for estimated future taxes would be speculative and would precede the utility’s liability for such taxes.
 

 The Appellate Division, in unanimously affirming the Commission’s determination, held that although the Commission possessed the discretionary power under section 113 of the Public Service Law, as amended in 1970 (L. 1970, ch. 271), to order
 
 *402
 
 refunds to consumers and/or reparations to public utilities, whenever it grants a temporary rate increase pending détermination of the final rate, its refusal to allow reparations to NEW was not arbitrary, capricious, or an abuse of discretion. The' Appellate Division further held that NEW was not entitled to recoup the difference between the temporary and final rates under section 114 of the Public Service Law as that section applied only to revenue losses suffered by utilities during temporary rate
 
 decreases,
 
 and did not apply to a temporary rate increase granted pending approval of proposed increased rates filed by the utility. Finally, the court held that there was substantial evidence to support the Commission’s refusal to include a revenue allowance for estimated future tax increases in the final rates.
 

 The companion appeal of Long Island Water Corporation (LIW) presents a similar factual pattern. LIW commenced an article 78 proceeding to review a determination of the Commission which granted a permanent rate increase of $1,630,376 and denied reparations. The new rates increased the original rate of return from 3.49% to 6.95%. As in the NEW case, the Commission suspended the proposed increased rate schedule filed by LIW for 10 months, and granted a temporary rate increase predicated upon a 5.5% rate of return. The Commission denied reparations to LIW for the period the proposed rate increases were suspended upon the ground that section 113 of the Public Service Law did not authorize reparations during the 10-month period that it is permitted to suspend proposed rate increases pursuant to section 89-c of the same law. The Appellate Division confirmed the determination, and dismissed the petition upon the authority of its decision in the companion case involving NEW.
 
 (Matter of New Rochelle Water Co.
 
 v.
 
 Public Serv. Comm.,
 
 38 A D 2d 375.)
 

 Subdivision 10 of section 89-c of the Public Service Law establishes the statutory power of the Commission to suspend proposed new rates for the maximum period of 10 months, and provides that the prior rates remain in effect during the suspension period unless the Commission authorizes a temporary rate pursuant to section 89-j of the same statute.
 

 Whenever the Commission enters into a hearing concerning the propriety of a proposed rate increase filed by a public utility
 
 *403
 
 company
 
 and
 
 allows a temporary rate increase,, the provisions of section 113 of the Public Service Law pertaining to reparations become applicable. «
 

 At issue on these appeals is whether section 113 of the Public Service Law requires the Commission to grant reparations
 
 [1]
 
 to public utility companies where a temporary rate increase granted by the Commission during the suspension period is less than the final rate increase.
 

 As enacted in 1930 (L. 1930, ch. 790), section 113 provided that, as to newly filed rate increases which went
 
 into effect
 
 while the Commission was conducting hearings concerning the propriety of such increased rates, the Commission could direct refunds, with interest, of any part of such increase found to be excessive to the persons who paid the increased rates. However, the statute restricted refunds to the two-year period prior to the establishment of the final rate. Section 113, as originally enacted, did not apply to proposed increased rates which were suspended by the Commission prior to their taking effect. Thus, refunds were not required in the event that temporary rates established during the suspension period were higher than the final rate. As so enacted, section 113 did not authorize the Commission to grant reparations to utilities where the Commission suspended a proposed rate increase prior to its taking effect and established a temporary rate which was less than the final rate. Indeed, as enacted in 1930, section 113 did not authorize reparations to public utilities under any circumstances.
 

 Section 113 was substantially amended by chapter 271 of the Laws of 1970
 
 [2]
 
 to provide for refunds to consumers not only
 
 *404
 
 when a proposed rate is in effect pending the final/rate determination by the Commission, but also when a proposed rate increase is suspended and a temporary rate increase is granted by the Commission. The 1970 amendment also, for the first time in any part of the Public Service Law, provided that where temporary rates authorized by the Commission are inadequate, the Commission ‘ ‘
 
 may
 
 by order authorize appropriate reparation to the company”. (Public Service Law, § 113 [emphasis supplied],)
 

 The Appellate Division held that the use of the word “ may ” in section 113, in relation to reparations and refunds, gave the Commission the discretionary authority to order reparations and refunds where appropriate.
 

 We agree with their interpretation. It should be abundantly clear from the context in which the word “ may” appears in the 1970 amendment to section 113 that it is used as a permissive verb with regard to both reparations and refunds. (See McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 177.) Indeed, the Commission has consistently interpreted the verb “ may ” in the 1970 amendment to section 113 as giving it the discretionary power to order refunds to consumers whenever the temporary rates were excessive. There is nothing in the legislative history to the 1970 amendment to indicate that the Legislature ascribed any different meaning to the verb “ may ” when it used the verb in the same amendment in connection with reparations. The statute clearly states that the Commission possesses the authority to allow reparations to the utility if, in the discretion of the Commission, the temporary rate is inadequate and such order would be appropriate. Thus, we hold that
 
 *405
 
 the Legislature, by the 1970 amendment to section 113, created in the Commission the discretionary power to order reparations whenever proposed rate increases are suspended and temporary rate increases are inadequate.
 

 Section 113, as amended, confers upon the Commission the discretionary authority to order reparations,, and the utility need not show extraordinary justification in order to establish its entitlement to appropriate reparations. However, the records in these two proceedings adequately establish that the Commission exercised its discretion in each case, and that its refusal to authorize reparations was not arbitrary, capricious, or an abuse of discretion.
 

 Alternatively, the utilities argue that section 114 of the Public Service Law entitles them to reparations as a matter of right. Section 114 provides that the Commission may * ‘ in proceedings involving the reasonableness of the rates of any public utility * * * brought either on its own motion or upon complaint
 
 ’ ’
 
 prescribe temporary rates to be charged by the utility pending final determination of the rate proceeding, and in determining the final rates, the Commission is authorized to consider the “ effect ” of the temporary rates. In
 
 Matter of Bronx Gas & Elec. Co.
 
 v.
 
 Maltbie
 
 (271 N. Y. 364), we held that the so-called recoupment provision of section 114, which authorizes the Commission to consider the effect of temporary rates in setting final rates, required the Commission in fixing the final rates to make up to the utility any loss it may have suffered under an excessive temporary rate decrease. (See, also,
 
 Staten Is. Edison Corp.
 
 v.
 
 Maltbie,
 
 267 App. Div. 72, affd. 292 N. Y. 611.)
 

 Here, the Appellate Division held that section 114 applied only to rate
 
 decreases,
 
 but did not apply to temporary rate
 
 increases
 
 granted by the Commission pending approval of the rates filed by utilities. Our reading of the legislative history of section 114, and the 1970 amendment to section 113 (L. 1970, ch. 271), establishes that this construction of section 114 is correct. We had occasion to pass upon the recoupment provision of section 114 soon after it was enacted. (L. 1934, ch. 287.) In
 
 Matter of Bronx Gas & Elec. Corp.
 
 v.
 
 Maltbie
 
 (271 N. Y. 364,
 
 supra
 
 [1936]), we held that section 114 was enacted in response to the constitutional requirements of
 
 Prendergast
 
 v.
 
 New York Tel. Co.
 
 (262 U. S. 43), which held that where the
 
 *406
 
 Commission instituted proceedings against a utility and ordered temporary rate
 
 reductions
 
 pending an investigation, such temporary rates would be confiscatory and violative of due process unless the utility was permitted to recoup losses suffered during the effective period of the temporary rate
 
 reductions.
 
 All reported cases in which section 114 has been applied to permit recoupment involve temporary rate
 
 reductions.
 
 (See, e.g,,
 
 Matter of Consolidated Edison Co. of N. Y.
 
 v. Maltbie, 275 App. Div. 475, revd. 300 N. Y. 196, mot. for rearg. den. 300 N. Y. 645, app. dsmd. 339 U. S. 973;
 
 Matter of Consolidated Edison Co. of N. Y.
 
 v.
 
 Maltbie,
 
 275 App. Div. 731, revd. 299 N. Y. 172;
 
 Staten Is. Edison Corp. v. Maltbie,
 
 267 App. Div. 72, affd. 292 N. Y. 611,
 
 supra; Matter of Yonkers Elec. Light & Power Co.
 
 v.
 
 Maltbie,
 
 245 App. Div. 419, revd. 271 N. Y. 364;
 
 County Transp. Co.
 
 v.
 
 Maltbie,
 
 273 App. Div. 437.) The Commission has consistently refused to apply section 114 to temporary rate
 
 increases
 
 upon the ground that section 114 was-intended to apply solely to temporary rate
 
 reductions.
 

 .
 
 There can be little doubt that the Legislature was cognizant of this long-standing construction placed upon section 114 by the courts, and by the Commission, when it enacted the 1970 amendment to section 113. (L. 1970, ch. 271.) Indeed, the 1970 amendment to section 113, which grapts to the Commission the
 
 discretionary
 
 authority to order reparations when proposed rate increases are suspended and temporary rates are inadequate, would be superfluous if section 114, which
 
 mandates
 
 recoupment, applied to temporary rate
 
 increases
 
 as well as temporary rate
 
 reductions.
 
 Thus, when sections 113 and 114 are read
 
 in pari materia,
 
 section 114 requires recoupment where recoupment is constitutionally required (excessive temporary rate
 
 reductions),
 
 and section 113 grants discretionary power to the Commission to order reparations to utilities where appropriate where proposed rate increases are suspended and temporary rate increases are inadequate in light of the final rate determination.
 

 We conclude that the Commission acted within its statutory authority in denying reparations. Both utilities, however, contend that the Commission’s refusal to allow them reparations, representing the difference between the revenue produced by the temporary rates and the revenue produced by the higher final rates, for the period the temporary rates were in effect, consti
 
 *407
 
 tuted confiscation of their property and denied them due process of law. NEW makes the further constitutional argument that the Commission also confiscated its property for the period between the time that the proposed rates were suspended and the date that the increased temporary rates were granted.
 

 It is well settled, of course, that a public utility cannot be deprived of a reasonable return upon its investment for ah extended period of time as this would constitute a confiscation of its property in violation of due process of law.
 
 (Prendergast
 
 v.
 
 New York Tel. Co.,
 
 262 U. S. 43,
 
 supra.)
 
 In
 
 Prendergast (supra),
 
 the Supreme Court held that an order of the Commission which temporarily
 
 reduced
 
 rates of the New York Telephone Company resulted in confiscation of the utility’s property as there was no limitation on the period during which the reduced rates might femain in effect and the Commission possessed no power to make the utility whole if it was finally determined that the temporary reduced rates had been too low.
 
 Prendergast (supra)
 
 has been applied to temporary rate reductions (see, e.g.,
 
 Matter of Bronx Gas & Elec. Co.
 
 v.
 
 Maltbie, 271
 
 N. Y. 364,
 
 supra),
 
 but has never been applied to proposed rate
 
 increases
 
 which are suspended prior to their effective date or to temporary rate
 
 increases
 
 made during the suspension period.
 

 There is a valid distinction between the temporary
 
 reduction
 
 of existing rates, whiéh results in confiscation of the utility’s property unless some provision is made to enable the utility to recoup its losses if it is ultimately determined that the reduced rate was too low, and the
 
 suspension
 
 of a proposed rate increase which merely preserves the
 
 status quo
 
 for a reasonably brief period of time while the Commission determines the reasonableness of the proposed rate
 
 increases.
 

 Subdivision 10 of section 89-e of the Public Service Law clearly establishes the statutory authority of the Commission to suspend proposed rate increases for the maximum period of 10 months, and provides that the prior rates remain in effect unless the Commission authorizes a teniporary rate. Prior to the 1970 amendment to section 113 of the Public Service Law, any loss sustained by the public utility during the suspension period had to be borne by "it as a necessary incident of rate regulation. As .far as we can 'determine, the constitutionality of the suspension provisions of the Public Service Law have never been pre
 
 *408
 
 viously questioned, although these provisions have been in effect since 1931. (Added L. 1931, ch. 715.)
 

 ' In
 
 Hope Natural Gas Co.
 
 v.
 
 Federal Power Comm.
 
 (196 F. 2d 803, rehearing den. 197 F. 2d 522 [4th Cir., 1952]), the Circuit Court rejected a gas utility’s argument that the rates which it was required to maintain in. effect during the five-month suspension period provided by the Federal Natural Gas Act (U. S. Code, tit. 15, § 717
 
 et seq.)
 
 were confiscatory because the Federal Power Commission ultimately authorized higher permanent rates. In substance, the utility in
 
 Hope (supra)
 
 argued that due process required that the higher final rates be applied retroactively to the date that its proposed increased rates would have become effective but for the suspension, which is the argument made by the utilities in the instant cases. After noting that the Natural Gas Act specifically prohibited retroactive application of the final permanent rates to the period during which the rates were suspended (196 F. 2d, at pp. 804-805), the Circuit Court in
 
 Hope (supra)
 
 rejected the utility’s attack on the constitutionality of the statute, stating:
 

 “It is argued that the constitutional guaranty against the enforcement of rates that are confiscatory requires that rates found reasonable be applied to the period of suspension. We do not think so. It has never been so held with respect to railroad rates, and there is no reason why any different principle should apply in the case of gas rates. The holding that certain rates may be allowed as reasonable does not mean that lower rates must be condemned as unreasonable and confiscatory, especially where they are continued in preservation of the status quo during a reasonable period of rate investigation. With changes in economic conditions rates must be changed from time to time, and the lag which necessarily accompanies the making of changes may result to the benefit of the utility as well as to its detriment * * * Rate making is not an exact science and losses of one period must be counterbalanced against gains of another in any fair consideration of the reasónableness of the rate making procedure.
 

 “It is true, of course, that a utility is entitled to rates that are just and reasonable; but this is not to say that rates must fluctuate automatically with every change in economic conditions or that a reasonable time may not be allowed for deter
 
 *409
 
 mining the reasonableness of a proposed increase in rates before it is allowed to go into effect. Any loss sustained by a maintenance of the status quo while such determination is being made is properly considered, not as a violation of constitutional right, but as a necessary incident of rate regulation so long as the period of suspension does not ‘ overpass the bounds of reason ’. See American Telephone & Telegraph Co. v. United States, 299 U. S. 232, 247 * * *; Federal Power Commission v. East Ohio Gas Co., 338 U. S. 464, 475 ”. (196 F. 2d, at pp. 808-809.)
 

 In the
 
 Permian Basin Area Rate Cases
 
 (390 U. S. 747, 780-781), the Supreme Court approved regulations promulgated by the Federal Power Commission which prohibited the filing of increased rates for a 28-month ‘
 
 ‘
 
 moratorium ’ ’ period following the decision in a rate proceeding. This court rejected a constitutional attack upon a provision in an earlier version of the Public Service Law which precluded utilities from obtaining rate relief for a period of three years following any Commission rate determination.
 
 (Village of Saratoga Springs
 
 v.
 
 Saratoga Gas, Elec. Light & Power Co.,
 
 191 N. Y. 123, 149.) Although we noted in the
 
 Saratoga Springs
 
 case
 
 (supra)
 
 that “ circumstances might so alter that before the expiration of the three years a rate which was reasonable at the time it was established would become unreasonable ”, we, nevertheless, concluded that ‘ ‘ the legislature was justified in enacting some period of repose during which the rate should remain stable ” and held that a three-year moratorium was reasonable under the circumstances of that case.
 
 [3]
 
 (191 N. Y., at p. 149.)
 

 Thus, the 10-month period during which subdivision 10 of section 89-c of the Public Service Law permits the Commission to suspend a proposed rate increase preserves the
 
 status quo
 
 for a reasonably brief period of time which meets due process requirements. After all, the utilities enjoy a public monopoly or franchise, and, of necessity, a regulatory period of suspension is required while the Commission studies the reasonableness of proposed rate increases. Since it is constitutional for the Commis
 
 *410
 
 sion to suspend proposed rate increases absolutely for 10 months, a fortiori, the Public Service Law which makes provision for temporary rate increases during the period of suspension (§§ 89-c, 89-j), and gives the Commission the discretionary power to authorize “ appropriate reparation” to the utility if such temporary rates'are inadequate (§ 113), clearly meets the due process requirements of the State and Federal Constitutions.
 

 The utilities also contend that the Commission’s determinations denying reparations violated their right to equal protection of law. Since we have interpreted section 113 of the Public Service Law, which is the source of the Commission’s reparations authority, to confer equal discretionary power upon the Commission to award reparations to utilities or refunds to consumers, there is no denial of equal protection of law in regard to section 113.
 

 The fact that section 114 mandates recoupment if existing rates are temporarily
 
 reduced
 
 and the Commission ultimately determines that the reduction was excessive, while no reparations are authorized by statute if proposed rate increases are suspended unless the Commission grants a temporary rate increase (§ 113), does not violate equal protection. As explained above, due process requires recoupment for excessive temporary rate
 
 reductions,
 
 but does not require reparations, where proposed rate
 
 increases
 
 are suspended for a reasonable period of time pending investigation and determination of the final rate. Thus, the disparity in statutory treatment of rate reductions and suspension of proposed rate increases represents a reasonable classification founded on due process requirements, and does not violate equal protection.
 

 There is a gap in the present statutory pattern concerning the period between the time the Commission suspends a proposed rate increase and authorizes a temporary rate increase. There is no statutory authority for reparations during this period. However, this period is of short duration as the utility may immediately apply for a temporary rate increase. This gap in reparations authority is a matter of legislative policy, and is not of constitutional dimension.
 

 NEW makes the additional constitutional argument that the Commission violated due process by denying it a $200,000 adjustment for estimated future real property and special franchise
 
 *411
 
 taxes resulting from new construction, which did not yet appear on the tax assessment rolls during the test period, since the Commission’s staff did not question this adjustment during the hearing. The Appellate Division held that there was substantial evidence to support this portion of the Commission’s determination. It appears undisputed that this adjustment was for estimated taxes resulting from new construction which did not yet appear on the tax assessment rolls during the test period. Where the facts are not in dispute, the Commission is free to exercise its own judgment concerning whether an adjustment in operating income is appropriate. (See
 
 Market St. Ry. Co.
 
 v.
 
 Railroad Comm.,
 
 324 U. S. 548, 560.). The Commission adequately protected the interests of NRW as to this proposed adjustment by giving it permission to apply for a further rate increase on an expedited basis to cover the cost of such tax increases, without the necessity of further hearings, as soon as the amount of taxes resulting from the new construction was definitely known.
 

 Accordingly, the orders appealed from should he affirmed.
 

 Chief Judge Ftjld and Judges Burke, Scileppi, Bergan, Breitel and Gibson concur.
 

 In each case: Order affirmed, without costs.
 

 [1]
 

 . Section 113 does not define the term “ reparations ”, The parties use “reparations” in these companion appeals to refer to the difference between the revenue received under the temporary rates and that which Would have been received under the permanent rates ultimately approved by the Commission. This construction is supported by the Legislative Memorandum (N. Y. Legis. Ann., 1970, p. 339) and Governor’s Memorandum (N. Y. Legis. Ann., 1970, pp. 480-481), which use the terms reparations and refunds to refer to the difference between temporary and final rates.
 

 [2]
 

 . Public Service Law.
 

 “§ 113. Reparations and refunds; actions. Whenever a public utility company, on its own initiative shall file with the commission a schedule stating an increased rate or charge, and the commission shall enter upon a hearing concerning the propriety of such increased rate or charge, the
 
 *404
 
 commission shall by order require the interested company to keep accurate account during the pendency of the hearing, in detail, of all amounts received by reason of such increase, or
 
 by reason of an increase received as a result of the establishment of temporary rates
 
 * * * and upon completion of the hearing and decision may, on application, by order require the interested company to refund * * * such portion of such increased rates * * * as by its decision shall be found not justified
 
 and, in the case of temporary rates, may * * • authorize appropriate reparation to the company if such temporary rates were found inadequate
 
 ”. • (Emphasis represents the language inserted by the 1970 amendment. For “Legislative Memoranda”, see N. Y. Legis. Ann., 1970, p. 339; “Governor’s Memoranda ”, N. Y. Legis. Ann., 1970, pp. 480-481.)
 

 [3]
 

 . However, we held the former statute to be unconstitutional in the
 
 Saratoga Springs
 
 case
 
 (supra)
 
 because the statute made no provision for the utility to obtain rate increases after expiration of the three-year moratorium with the result that the rate might be frozen indefinitely.