BLANCHE, Justice.*
Louisiana Power and Light Company (LP&L) filed an application with the Louisiana Public Service Commission (Commission) on November 12, 1976, seeking a rate increase totaling $53,986,820, alleging an increase was necessary due to the deterioration of its earnings, inflation, and the need for continued construction of its new generating plant. Hooker Chemicals & Plastics Corporation (Hooker) successfully intervened. Intervention was also sought by the Louisiana Consumer’s League, Inc., but was. denied by the Commission. That denial was subsequently reversed by this Court and the Consumer’s League was ordered to be made a party. Louisiana Consumer’s League, Inc. v. Louisiana Public Service Commission, 351 So.2d 128 (La.1977).
Hearings on the rate request commenced in March of 1977 and ran intermittently until concluded in October of 1977. The case was then taken under advisement by the Commission. On November 23, 1977, the Commission, by Commission Order No. U-13220, granted LP&L a rate increase of $4,970,610 and stipulated the increase was to be allocated entirely to LP&L’s industrial customers.
LP&L immediately implemented the increase granted by the Commission and filed a devolutive appeal with the Nineteenth Judicial District Court under LSA-R.S. 45:1192. The utility company claimed the decision of the Commission in awarding only $4,970,610 was arbitrary, capricious, confiscatory and denied them a fair rate of return on equity. LP&L sought interlocutory injunctive relief suspending the operation of Order No. U-13220 of the Commission and enjoining the Commission from using that order to prevent LP&L from implementing a $13,790,000 rate increase during the pendency of the appeal. LP&L further requested that after a hearing on the merits the injunction be made permanent and they be granted a rate increase in the full amount of $53,986,820.
Hooker also filed a petition for appeal and review under R.S. 45:1192, being a party in interest dissatisfied by the order, seeking review of the allocation of the entire rate increase to industrial customers. Union Carbide Corporation intervened on the side of Hooker in this appeal. Subsequently, on motion of Hooker, the separate appeals of LP&L and Hooker were consolidated.
The request of appellant LP&L for interlocutory injunctive relief was denied. The district court, after a painstaking and thorough review of the record, determined that the Commission had acted arbitrarily and capriciously in awarding only $4,970,610, when the evidence more than adequately supported the finding that $13,790,000 was the proper rate increase, and also in allocating the entire $4,970,610 rate increase to industrial customers. The trial judge remanded the case to the Commission, ordering it to determine how the $13,790,000 *1057 increase should be allocated among LP&L’s various classes of customers. The Commission, however, was limited in that the Court held that any allocation must be done on some cost-of-service basis. The district judge, in his Written Reasons for Judgment, went on to say:
“When this has been accomplished, the Court will order a full accounting to be made by LP&L regarding any refund or credit for any amounts paid by the industrial customers pursuant to the Commission’s Order No. U-13220 in excess of what would have been the amounts allo-cable to such industries if the amount of the increase had been properly allocated among all customer classes based on cost of service. (Emphasis added)
On remand, the Commission concluded that their data was “insufficient to make a precise determination of the proper allocation of costs among customer classes pursuant to the district court’s determination” and ordered the rate increase be allocated based upon historical allocation factors proposed by LP&L.
Following remand, based upon the finding of the Commission, the district court issued the following order:
“IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the said rate increase in the sum of $13,790,000 shall be allocated to the various classes of customers of Louisiana Power & Light Company as follows:
Industrial $ 4,970,000
Residential 5,570,000
Commercial 2,885,000
Municipal Water Pumping 85,000
Street and Other Lighting 280,000
Total $18,790,000
“IT IS FURTHER ORDERED, ADJUDGED AND DECREED that within 90 days of the date hereof, Louisiana Power & Light shall render a full accounting regarding the refund or credit due for amounts paid by industrial customers pursuant to Commission Order No. U-13220 from date of its implementation by Louisiana Power & Light to date of this Judgment, in excess of what would have been the amount allocated to such industries if the amount of the increase ordered by Commission Order No. U-13220 had been properly allocated among all customer classes based on cost of service; and the Court shall retain jurisdiction of this phase of the case until the accounting has been made as ordered herein.” (Emphasis added)
From this judgment, both LP&L and the Commission devolutively appealed to this Court under Article 4, § 21(E) of the Louisiana Constitution of 1974. LP&L also filed in the district court a motion to stay the accounting ordered by that court pending the appeal. This motion was granted. Hooker filed a motion in this Court to dismiss the appeal or, in the alternative, to vacate the stay order granted by the district court. We denied the motion to vacate the stay order and referred the motion to dismiss to the merits. All parties, including the Louisiana Consumer’s League, filed briefs.
Neither LP&L, nor the Commission, assigned as error the amount of the increase ordered by the district court or the method by which it was allocated. Additionally, no one has challenged the district court’s finding that the allocation by the Commission of the $4,970,000 increase solely to industrial customers was arbitrary, capricious and confiscatory. The sole issue raised by this appeal is whether the district court erred in ordering LP&L to make an accounting to determine the amount of refund or credit due to industrial customers for the amounts they paid, during the period the Commission’s original order (No. U-13220) was in effect, in excess of what would have been the amount allocated to such industries if the original increase had been properly allocated among all customer classes on a cost-of-service basis.
MOTION TO DISMISS
Appellee, Hooker, filed a motion to dismiss the appeal on the ground that this Court was without jurisdiction.
*1058 Appellants rely on Article 4, Section 21(E) of the 1974 Louisiana Constitution as giving them the right of direct appeal to this Court in cases involving actions taken by the Commission. Counsel for ap-pellee Hooker claims this reliance is misplaced and cites the provision, in part, as follows:
“These rights of appeal shall extend to any action by the Commission.” (Emphasis by appellee)
Appellee claims that the action appealed, the order for an accounting, is not an action taken by the Commission but rather is action taken by the district court. Since this Court’s jurisdiction under Article 4, § 21(E) is limited to “actions by the Commission,” it is urged, the appeal should be dismissed.
This argument is wholly without merit, as a full reading of the section reveals:
“(E) Appeals. Appeal may be taken in the manner provided by law by any aggrieved party or intervenor to the district court of the domicile of the commission. A right of direct appeal from any judgment of the district court shall be allowed to the supreme court. These rights of appeal shall extend to any action by the commission, including but not limited to action taken by the commission or by a public utility under the provisions of. Sub-paragraph (3) of Paragraph (D) of this Section.” (Emphasis added)
The section makes it clear that any judgment of a district court sitting in review of actions by the Public Service Commission under the authority of Article 4, § 21, is directly appealable to this Court. The motion to dismiss is, therefore, denied.
THE MERITS
After several months of hearings on the $53,986,820 proposed increase, the Commission issued Order No. U-13220, which contained the following language:
“For the reasons stated in the opinions of Commissioners Louis J. Lambert, Thomas E. Powell and John Schweg-mann, Jr.;
“IT IS ORDERED, That Louisiana Power and Light Company be permitted to increase its rates to industrial customers for retail electric service in the gross amount of $4,970,610.”
Commissioner Schwegmann’s 26-page report concluded that 12.5 percent earnings on equity would produce an overall fair rate of return of 9.2 percent. In order to achieve this rate of return, it was necessary that LP&L be granted a rate increase of $13,790,000. Schwegmann rejected the approach taken by the other two commissioners that any increase should be borne wholly by industrial customers. In his conclusion, he acknowledged that the proper amount allocable to industrial consumers under a $13,790,000 increase would be $4,970,610. Commissioners Lambert and Powell, however, concluded that only a $4,970,610 increase was warranted and that the entire amount should be borne by industrial consumers. However arrived at, the result of the Commission’s action was that a $4,970,610 increase allocable solely to industrial consumers was authorized and immediately put into effect by LP&L.
The district court made two separate findings as to the action taken by the Commission. First, the court concluded that the Commission had acted arbitrarily and capriciously in allowing only a $4,970,610 increase when a $13,790,000 increase was warranted. No party has assigned this finding as error and, therefore, the question of the amount of the increase is not before us today. Secondly, the district court found that the Commission had acted arbitrarily and capriciously in allocating the entire $4,970,610 increase solely to industrial customers.
The trial judge, in his Written Reasons for Judgment, noted:
“There should be no disagreement with the statement that cost of service is the appropriate basis for rate increase allocation. Much testimony was given at the hearings regarding the different methods of computing the cost of service. The Commission ignored all of them, stating that they did not have sufficient data. *1059 Even if they did not have sufficient data, their action of allocating this entire increase to the industrial customers, was arbitrary.”
The finding by the trial court that the allocation of the $4,970,610 increase solely to industrial customers was arbitrary, capricious and confiscatory has not been assigned as error, nor has any party appealed the trial court’s allocation of the $13,790,000 increase on a cost-of-service basis, the method of computing the cost of service, or the allocation factors which were finally used.
Therefore, for the purposes of determining whether any refund is due to the industrial consumers for sums paid during the period when Commission Order U-13220 was in effect, we assume that the trial court was correct in holding the increase was allocated in an arbitrary and capricious manner and should have been calculated on a cost-of-service basis.
ISSUES
Appellants basically advance two arguments as to why the trial judge erred in ordering an accounting. First, they claim that a utility which collects a revenue pursuant to a Commission-approved increase is not required to make a refund in the event that the rate is later determined to be excessive. Secondly, even assuming that a refund may be required where a rate increase granted by the Commission is put into effect and then later reversed or reduced, no refund is due in this case. Appellants claim that since the amount which the industrial customers were forced to pay during the effective period of Commission Order No. U—13220 is the same amount which was later determined to be allocable to the industrial consumers on a cost-of-service basis under the $13,790,000 increase granted by the district court, the industrial consumers have simply been paying all along what they were required to pay. The corollary to this argument is that the Commission was correct in assessing a $4,970,610 increase against industrial consumers but was arbitrary in failing to order additional increases against other classes of consumers. Hence, the argument goes, the industrial consumers paid their fair share from the beginning and the other classes of consumers simply received a windfall during the period the order was in effect.
Appellee Hooker claims that Louisiana law provides for refunds in cases where a rate increase, authorized by the Commission and put into effect by the utility, is subsequently reversed by a court on appeal. They claim this Court granted such a refund in Gulf States Utilities Company v. Louisiana Public Service Commission, 364 So.2d 1266 (La.1978). Hooker further argues that there were, in fact, two rate increases: the first in the amount of $4,970,610 under Commission Order U— 13220 which was allocated solely to industrial customers and was in effect from November 23, 1977 (the date the Commission’s order went into effect) until the date the district court rendered its judgment (July 24, 1978); and a second increase in the amount of $13,790,000 which came as a result of the judgment of the district court reversing the Commission and which was allocated on a cost-of-service basis. Hooker argues that the fact that the amount allocated to industrial customers under the second increase was practically the same as that allocated under the first increase has nothing to do with whether an accounting is due for the period the original increase was in effect. The question is simply whether industrial customers paid a greater portion of the first rate increase than would have been due by them had the increase been allotted based upon cost of service.
1.
In regard to appellants’ first contention, that a utility which collects a revenue pursuant to a commission-approved increase is not required to make a refund in the event that the rate increase is later reversed or reduced, we note that Article 4, Section 21(D) of the Louisiana Constitution of 1974 provides:
“(D) Applications, Petitions, and Schedules; Protective Bond and Security.
*1060 “(1) Within twenty days after a common carrier or public utility files a proposed rate schedule which would result in a change in rates, it shall give notice thereof by publication in the official state journal and in the official journal of each parish within the geographical area in which the schedule would become applicable.
“(2) Within twelve months after the effective filing date, the commission shall render a full decision on each application, petition, and proposed rate schedule.
“(3) After the effective filing date of any proposed schedule by a public utility which would result in a rate increase, the commission may permit the proposed schedule to be put into effect, in whole or in part, pending its decision on the application for rate increase and subject to protective bond or security approved by the commission. If no decision is rendered on the application within twelve months after such filing date, the proposed increase may be put into effect, but only if and as provided by law and subject to protective bond or security requirements, until final action by a court of last resort.
“(4) If a proposed increase which has been put into effect is finally disallowed, in whole or in part, the utility shall make full refund, with legal interest thereon, within the time and in the manner prescribed by law.” (Emphasis added)
While at first blush it appears that sub-paragraph (4) dealing with refunds for disallowed rate increases relates only to sub-paragraph (3) of the same section, a thorough reading of the constitutional debates during this section’s consideration indicates an intent by the delegates that rate increases which were approved by the Commission after a full determination and later reversed or reduced were to be subject to this provision. Immediately prior to passage of the Ray Amendment, which provided the great majority of the substance for paragraph (D), Ray explained subparagraph (4) as follows:
“Section 4 deals with the ... 2 and 3. In other words, suppose the commission, six months after an application was filed with it, granted the rate increase and put it in effect. Then subsequently, a year and a half or two years later, the Supreme Court says you should not have granted the rate increase; then Section 4 is applicable, and the utility company must make the refund with interest subject to the method and time being developed by the legislature.” (Louisiana Constitutional Convention Verbatim Transcripts, Volume 35, 107th Day, p. 29. See also Louisiana Constitutional Convention Verbatim Transcripts, Volume 34, 105th Day, p. 145, and Volume 35, 107th Day, p. 4.)
The only thing the delegates left to the discretion of the legislature was what time limitations, if any, would be placed on the utility and in what form the refund would be paid. The failure of the legislature to act on these two minor points, however, should not operate to deprive appellees of their right under the section to a refund since reasonable requirements of time and method can be supplied by either the Commission or the courts, as was done in this case by the district court.[1]
The question presented by this appeal is whether the refund requirements of subparagraph (4) apply not only to a situation where an increase granted by the Commission was later reduced or reversed but also in the case where one class of consumers has paid a greater amount of an increase than their fair share because of an *1061 improper allocation and that improper allocation is subsequently reversed. We believe that it should. The clear purpose of subparagraph (4) is to insure that utility consumers are refunded amounts which they pay pursuant to a rate increase when that rate increase is subsequently disallowed. With this purpose in mind, we have no hesitancy in interpreting this provision so as to include a situation where an improper allocation results in an overpayment by one or more classes of consumers.
2.
The- second basic position taken by appellants is that even should a refund be required in some eases, one should not be granted here since the amount of the increase borne entirely by industrial customers under Commission Order No. U-13220 is substantially the same amount that was finally determined to be allocable to industrial consumers under the increase granted by the district court. They claim that since the amounts are the same the industrial consumers were merely paying their fair share the entire time while other classes of consumers received a windfall as a result of the Commission’s failure to grant corresponding increases allocated to other classes of consumers.
On the surface, this reasoning is very appealing. However, it breaks down under the inescapable conclusion that there was not one but two, increases in this case. Appellees correctly point out that during the seven months while Commission Order No. U-13220 was in effect LP&L was enjoying a rate increase of $4,970,610 of which industrial consumers bore 100 percent of the cost. The later increase and allocation is simply not relevant to the fact that for seven months industrial consumers paid a disproportionate share of an increase which should have been allocated on a cost-of-service basis. It is clear from reading the history of Article 4, Section 21(D)(4) that when a utility company collects under a rate increase authorized by the public service commission before the time for appeal has run or all appeals have been exhausted, it does so at its own risk that it may one day have to make a refund. Further, to adopt appellants’ position would result in a retroactive application of the rate increase granted by the district court.
Appellants claim that industrial consumers have not been prejudiced since they have not been required to do any more than pay their fair share of the cost of service from the beginning. We disagree. Cost of service is no more than a formula for allocating rates. The rate increase that was in effect during the seven-month period in question was borne entirely by industrial customers when, in fact, they should have only been required to bear approximately 34 percent of the increase. The fact that the rate was later increased by the district court, and the amount allocated to industrial customers under that increase was the same as the amount allocated wholly to industrial customers under the Commission’s order, does not alter the fact that industrial consumers paid, during the period in question, a percentage of the increase in excess of'what they could legally have been obliged to pay.
Counsel for appellants further argues that Commissioners Powell and Lambert, in fact, recognized that the $13,790,000 increase was mandated by the evidence but for some ulterior motive refused to vote for any rate increase which would affect anyone but industrial consumers. Therefore, they approved only the amount of the $13,-790,000 increase allocable to industrial consumers, which was $4,970,610, and stipulated that amount was to be paid by the industrial consumers. Hence, all the court did was to reverse the Commission and order that the remainder of the classes of consumers be forced to pay their portion of the $13,790,000 to which LP&L was legitimately entitled. Appellant claims that LP&L should not be penalized by having to make a refund because of the conduct of the Commission.
This Court, in reviewing the findings of administrative bodies, has always been loath to peer into the minds of the *1062 members who participate in such decisions. Our review is limited to determining whether such bodies have acted in an arbitrary and capricious manner such that their action violates the rights of due process of those who are affected by their decisions. Therefore, irrespective of how the Commission reached its decision, the fact is that as a body a $4,970,610 increase allotted solely to industrial customers was approved and industrial customers paid increased rates as a result thereof. The district court found this decision was arbitrary and capricious and no party has challenged that finding. Since we assume the district court was correct in that determination, the only issue for our consideration is whether the persons adversely affected by the arbitrary and capricious actions of the Commission are entitled to relief. We conclude that they are.
We, therefore, find no error in the district court judgment which ordered LP&L to make an accounting regarding refunds or credits for amounts paid by industrial consumers pursuant to Commission Order No. U — 13220 from the date of its implementation by LP&L to the date of the district court judgment in excess of what could have been the amount of the increase allocated to such industries if the amount of the increase ordered had been properly allocated among all customer classes based on cost of service.
For the above and foregoing reasons, the motion to dismiss filed by Hooker Chemicals & Plastics Corporation is denied, and the judgment of the district court is affirmed. Appellants are to pay all costs of this appeal.
MOTION TO DISMISS DENIED AND DISTRICT COURT JUDGMENT AFFIRMED.
DIXON and CALOGERO, JJ., dissent.

Judge Pike Hall, Jr., Louisiana Court of Appeal, Second Circuit, participated in this decision as an Associate Justice Ad Hoc.

. Subparagraph (4) is distinguished from the second sentence of subparagraph (3) in this regard. In South Central Bell Telephone Company v. Louisiana Public Service Commission, 334 So.2d 189 (La.1976), this Court denied relief because the legislature had not passed enabling legislation envisioned by the convention. The language “but only if and as provided by law” was set out in that subparagraph to make it clear that no rate increase could be put in effect by a utility company under that subpara-graph until the legislature had established the procedure and bond requirements.