377 So.2d 1023 (1979)
LOUISIANA POWER AND LIGHT COMPANY
v.
LOUISIANA PUBLIC SERVICE COMMISSION et al.
HOOKER CHEMICAL AND PLASTICS CORPORATION
v.
LOUISIANA PUBLIC SERVICE COMMISSION et al.
Nos. 64919, 64920.
Supreme Court of Louisiana.
November 12, 1979.
Rehearings Denied December 13, 1979.
*1024 Stephen M. Irving, Baton Rouge, for intervenor, La. Consumers League, Inc.
Marshall B. Brinkley, Gen. Counsel, Baton Rouge, Michael R. Fontham, Paul L. Zimmering, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for La. Public Service Commission, defendant-appellee.
R. Gordon Kean, Jr., Sanders, Downing, Kean & Cazedessus, Baton Rouge, for plaintiff-appellee, Hooker Chemicals & Plastics Corp. and intervenor, Union Carbide Corp.
Andrew P. Carter, J. Wayne Anderson, Monroe & Lemann, New Orleans, for plaintiff-appellant, La. Power & Light Co.
LANDRY, Justice ad hoc.
This appeal, by Louisiana Power and Light Company (LP&L), a sequel to our decision in Louisiana Power and Light Company v. Louisiana Public Service Commission, 369 So.2d 1054 (La.1979), (LP&L One), is from judgment of the trial court ordering LP&L to refund an overcharge to industrial customers and refusing LP&L permission to recoup the refund by means of an off-setting surcharge from all of its customer classes other than industrial. Hooker Chemicals & Plastics Corporation (Intervenor), an industrial customer of LP&L, has filed an exception of res judicata predicated upon the finality of LP&L One. We affirm.
By Order U-13220, dated November 23, 1977, the Louisiana Public Service Commission (Commission) granted LP&L a rate increase of $4,970,610.00 allocated exclusively to LP&L's industrial consumers. The granted increase resulted from an LP&L request for increases totaling $53,986,820.00, during the hearing of which, the Commission's consultant recommended an increase of $13,790,000.00 allocated among all of LP&L's customers. LP&L immediately implemented the $4,970,610.00 increase to its industrial consumers and appealed to the Nineteenth Judicial District Court, East Baton Rouge Parish seeking its requested total increase of $53,986,820.00 and also seeking injunctive relief prohibiting the Commission from employing Order U-13220 to prevent LP&L from implementing a $13,790,000.00 rate increase among all its customers during the pendency of its appeal.
The trial court disallowed LP&L's request for injunctive relief and concluded that the Commission acted arbitrarily and capriciously in both awarding an increase of only $4,976,610.00 and in allocating that entire amount solely to industrial consumers. Consequently, the district court reversed and set aside Order U-13220, awarded LP&L an increase of $13,790,000.00 and remanded the matter to the Commission for determination of the allocation of the $13,790,000.00 increase among LP&L's various customer classes, on a cost of service basis.
In his written reasons for granting the increase and remanding to the Commission, the trial court noted:
"When this has been accomplished, the Court will order a full accounting to be made by LP&L regarding any refund or credit for any amounts paid by the industrial customers pursuant to the Commission's Order No. U-13220 in excess of what would have been the amounts allocable to such industries if the amount of the increase had been properly allocated among all customer classes based on cost of service." (Emphasis added)
In compliance with the order of remand, and, based on historical factors, the Commission issued its Order No. U-13220-A which was incorporated into the trial court's judgment of July 24, 1978, and which pertinently states:
"IT IS ORDERED, ADJUDGED AND DECREED that the Public Service Commission's Order No. U-13220 is reversed, cancelled, and set aside;

*1025 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the said rate increase in the sum of $13,790,000 shall be allocated to the various classes of customers of Louisiana Power & Light Company as follows:

Industrial $ 4,970,000
Residential 5,570,000
Commercial 2,885,000
Municipal and Water Pumping 85,000
Street and Other Lighting 280,000
 ___________
 Total $13,790,000

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that within 90 days of the date hereof, Louisiana Power & Light shall render a full accounting regarding the refund or credit due for amounts paid by industrial customers pursuant to Commission Order No. U-13220 from date of its implementation by Louisiana Power & Light to date of this Judgment, in excess of what would have been the amount allocated to such industries if the amount of the increase ordered by the Commission Order No. U-13220 had been properly allocated among all customer classes based on cost of service; and the Court shall retain jurisdiction of this phase of the case until the accounting has been made as ordered herein." (Emphasis added)
Both the Commission and LP&L appealed the judgment of July 24, 1978, pursuant to La.Const.1974, Article 4, Section 21(E). In LP&L One we noted:
"The sole issue raised by this appeal is whether the district court erred in ordering LP&L to make an accounting to determine the amount of refund or credit due to industrial customers for the amounts they paid, during the period the Commission's original order (No. U-13220) was in effect, in excess of what would have been the amount allocated to such industries if the original increase had been properly allocated among all customer classes on a cost-of-service basis."
The former appeal was briefed and argued solely on the above stated issue. We denied Hooker's motion to dismiss the appeal in LP&L One. On the merits, in LP&L One, we affirmed the judgment of the trial court, which ordered the refund to industrial customers and in the course of the opinion noted:
"We, therefore, find no error in the district court judgment which ordered LP&L to make an accounting regarding refunds or credits for amounts paid by industrial consumers pursuant to Commission Order No. U-13220 from the date of its implementation by LP&L to the date of the district court judgment in excess of what could have been the amount of the increase allocated to such industries if the amount of the increase ordered had been properly allocated among all customer classes based on cost of service."
No application for rehearing was made by any litigant involved in LP&L One. On June 12, 1979, LP&L filed a "Motion for Allocation" in the district court, to which motion was appended the following results found by the Commission in compliance with the order for an accounting during the period Order No. U-13220 was in effect, namely, December, 1977, to July, 1978:

 "Pro Rata Billings-All Classes
Industrial 36.04% $1,622,544
Residential 40.39% 1,818,418
Commercial 20.92% 941,892
Municipal Pumping .61% 27,643
Street and Other Lighting 2.04% 91,568
 _______ __________
 Total 100.00% $4,502,065
 _______ __________
 Refund
Increased billings under approved rates
 to industrial customers only $4,502,065
Industrial Pro Rata-36.04% 1,622,544
 __________
 Industrial Refund $2,879,521
 __________
 Surcharge
Residential 63.15% $1,818,418
Commercial 32.71% 941,892
Municipal Pumping .96% 27,643
Street and Other Lighting 3.18% 91,568
 _______ __________
 Total 100.00% $2,879,521"
 _______ __________

LP&L's motion for allocation recognized the judgment in LP&L One as final, prayed *1026 for authorization of a refund to its industrial customers in an amount not exceeding $2,879,521.00 and moved the court for permission to recoup this sum in the form of an off-setting surcharge to all its other consumer classes on the allocation basis ordered in the district court's judgment on July 24, 1978. After hearing the motion, the district court rendered judgment ordering the refund but rejecting the surcharge request. This appeal by LP&L followed.
LP&L lists the following assignments of error:
(1) The district court had no authority to order the refund, an issue not raised in LP&L One and advanced for the first time on this present appeal; and (2) The trial court arbitrarily and capriciously denied the requested surcharge.
It is argued by LP&L that the sole issue on the prior appeal was whether the district court could order an accounting, therefore the issue of refund was not before the court and all reference to refund in LP&L One, is dicta. We find this position totally without merit. LP&L One expressly stated that the issue presented concerned the propriety of the trial court's ordering "... an accounting to determine the amount of refund or credit due to industrial consumers ..." (Emphasis supplied by the court).
To hold that our opinion in LP&L One, was limited to an accounting and did not contemplate refund, would be to disregard the explicit language in the opinion and tantamount to an exercise in futility. Assuming, arguendo, LP&L One, was limited solely to an accounting, concomitant to an accounting is a balance due. Black's Law Dictionary, 4th Edition, 1951, page 36, defines "accounting" as follows:
"An act or system of making up or settling accounts ... Rendition of an account, either voluntarily or by order of a court. In the latter case, it implies a rendition of a judgment for the balance ascertained to be due. The term may include payment of the amount due."
Authority to order a refund in cases of this nature, is expressly provided by La. Const.1974, Article 4, Section 21(D)(4) which states:
"(4) If a proposed increase which has been put into effect is finally disallowed, in whole or in part, the utility shall make full refund, with legal interest thereon, within the time and in the manner prescribed by law."
In LP&L One we referred to the above cited constitutional provision and the debate thereon which indicates intent that rate increases are subject to refund if subsequently reversed or reduced on judicial review of a Commission's rate order. We also held this provision applicable to an instance in which a customer class has paid an amount greater than its fair share of a rate increase because of an improper allocation which is subsequently reversed or reduced.
On this appeal LP&L argues that the court lacked authority to order the refund because at the time Order No. U-13220 was in effect the industrial customers were paying their fair share as was later determined by Commission Order No. U-13220-A. The fallacy and unsoundness of this argument was rejected in LP&L One, wherein we found that there were two separate and distinct increases involved. We add here that the first order can be of no comfort to LP&L because it was set aside as being arbitrary and capricious.
We find the basic issue to be whether the question presently under consideration is foreclosed by the application of the principle of res judicata pleaded by Hooker. For this doctrine to apply there must be an identity of the parties, the cause and the thing demanded. LSA-C.C. Articles 2285-2287, 3556(31). Welch v. Crown Zellerbach Corporation, 350 So.2d 154 (La.1978).
LP&L contends res judicata is inapplicable herein because the thing demanded herein is not the same as in LP&L One, because in the former instance the only issue was an accounting and the time, effort and expense incident thereto and did not require the refunding of money, and neither did it contemplate a retroactive reduction *1027 in rates and revenues. This analysis does not reflect the true posture of the prior appeal. In the former action LP&L moved to stay the accounting on the ground that the accounting might be void and useless if this court decided on the appeal that no accounting was in order. In LP&L One, we rejected Appellant's arguments and found that if we adopted Appellant's position, the result would be a retroactive application of the rate increase granted by the trial court. The decision in LP&L One, has become final.
We find that the proper principle to be applied to LP&L One, under the circumstances of this case, is that of the law of the case theory rather than res judicata. The law of the case principle relates to the binding effect of trial court rulings during later stages of the trial, the conclusive effects of appellate rulings at trial on remand, and the rule that appellate courts will nor ordinarily reconsider its own rulings of law on a subsequent appeal in the same case. Petition of Sewerage & Water Board of New Orleans, 278 So.2d 81 (La. 1973).
Also pertinent are the provisions of La.C. C.P. Article 2085, which provides:
"An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment."
In filing its Motion for Allocation, without having applied to this court for a rehearing in LP&L One, LP&L acquiesced in that judgment. It submitted to the trial court an accounting of the amount required to be refunded and requested authority to impose an off-setting refund. Having acquiesced in the judgment, the trial court's rulings, and those of this court have become final and represent the law of the case.
DID THE TRIAL COURT ARBITRARILY DENY THE REQUESTED SURCHARGE?
LP&L proposes to allocate the requested $2,879,521.00 surcharge at the rate of 63.15% residential, 32.71% commercial, 0.96% municipal pumping and 3.17% street and other lighting. As mentioned, this issue was initially raised in this court.
The Commission properly notes that the requested surcharge is in reality a retroactive rate increase which neither the Commission nor the judiciary may grant in the absence of express constitutional or statutory authority.
Primary jurisdiction to hear and determine rate applications is vested in the Commission pursuant to La.Const.1974, Article 4, Sections 21(B) and 21(D). This authority is implemented by the statutory provisions of LSA-R.S. 45:1161, et seq. Section 1163, above, vests the Commission with authority to fix and regulate rates charged or to be charged. Section 1163.1 above, defines, inter alia "full refund", "protective bonds", "proposed schedule", "security" and establishes the procedure for refunds, all of which comprise elements of the Commission's authority to fix rates. Section 1192, above, requires remand to the Commission in cases where new evidence is introduced on appeal, unless otherwise stipulated in writing by all parties to the proceeding. White v. Louisiana Public Service Commission, 259 La. 363, 250 So.2d 368 (1971). La. R.S. 45:1192 provides judicial review of Commission orders and specifically states that the court of review may affirm, modify, alter or set aside an order as justice may require.
The trial court judgment of July 24, 1978, did not amend Order No. U-13220. It reversed, annulled and set aside the order. It did not make the order retroactive to its initial issuance, neither does it even remotely infer that U-13220 was to be allocated to all classes of customers. It follows that, in essence, the requested surcharge is but an application for a rate increase which is solely within the primary jurisdiction of the Commission.
Appellant makes the final argument that to deny the surcharge is to impose a loss *1028 upon it because of an erroneous allocation by the Commission. It is suggested that Appellant is entitled to earn what was determined to be a fair return pursuant to Order U-13220 and notes that several jurisdictions recognize the right of a utility to be made whole during the interim in which a rate increase is deferred pending resolution of allocation.
Pervading the utility rate making process is the fundamental rule that rates are exclusively prospective in application and that future rates may not be designed to recoup past losses. Transcontinental & Western Air Inc. v. Civil Aeronautics Board, 336 U.S. 601, 69 S.Ct. 756, 93 L.Ed. 911 (1949); Rhode Island Consumers' Council v. Smith, 111 R.I. 271, 302 A.2d 757 (1973); Bebchick v. Washington Metropolitan Area Transit Comm's, 158 U.S.App.D.C. 79, 485 F.2d 858 (1973). The rationale of this principle is that the Commission acts in a legislative capacity in exercising its rate making authority; that rate making orders have statutory effect; and, that, as such, they are subject to the rules ordinarily applied in statutory construction. Arizona Grocery Co. v. Atchinson, T. & S. F. Ry., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348 (1932).
The Supreme Court of the United States has also ruled that to accord a rate order retroactive effect, requires "the clearest mandate". Claridge Apartments Co. v. Commissioner of Internal Revenue, 323 U.S. 141, 65 S.Ct. 172, 89 L.Ed. 139 (1944).
Applicability of the principle of non-retroactivity of rate making orders, has been considered in numerous jurisdictions all of which recognize the rule that statutory authority is an indispensable prerequisite to retroactivity of such orders. City of Miami v. Florida Public Service Commission, 73 PUR 3d 369 (Fla.1968); Re City Water Co. of Chattanooga, 84 PUR 3d 287 (Tenn.Pub.Serv.Comm'n, 1970); Michigan Consolidated Gas Co. v. Michigan Public Service Commission, 86 PUR 3d 521 (Mich. App.1970); Democratic Central Committee v. Washington Metropolitan Area Transit Commission, 141 U.S.App.D.C. 79, 436 F.2d 233 (D.C.Cir.1970); New Rochelle Water Co. v. Public Service Commission, 31 N.Y.2d 397, 340 N.Y.S.2d 617, 292 N.E.2d 767 (1972); New England Telephone & Telegraph Co. v. Public Service Commission, 116 R.I. 356, 358 A.2d 1 (1976); New England Telephone and Telegraph Co. v. Public Service Commission, 362 A.2d 741 (Me.1976).
In support of its asserted right to impose the surcharge, LP&L cites and relies upon Chesapeake & Potomac Tel. Co. v. Public Service Comm'n, 330 A.2d 236 (D.C.App. 1974), which sustained validity of an interim rate plan. Chesapeake, above, was distinguished in New England Telephone & Telegraph Co. v. Public Service Commission, above, which notes:
"Chesapeake & Potomac Tel. Co. v. Public Service Comm'n, 330 A.2d 236 (App.D.C. 1974) concerned a rate-setting procedure that was statutorily divided into two phases. Phase I, so-called, was that part of the procedure whereby the fair rate of return was determined. This was followed by Phase II, during which a rate design was formulated to effectuate the Phase I findings. In Chesapeake, the company sought to have implemented an interim rate plan that would permit them to earn the approved Phase I return pending the completion of Phase II. The commission acknowledged the need for interim relief but proposed that such funds be collected as a surcharge after conclusion of the Phase II hearings in order to avoid a disproportionate exaction from any one class of users. In response to this commission stance the company requested the court to direct the commission to implement the interim plan immediately. Citing the statutory power of the commission to fashion such interim relief, the court upheld its interim rate plan. In so holding, the court dismissed the allegation that this surcharge was illegal insofar as it was collected to pay for a loss previously incurred. By its Phase I order, the commission had declared that the company was entitled to earn a specific return prospectively from the date of the order. All that remained for the commission was to ascertain the *1029 exact source of the revenues that would go to satisfy that return. Pending that determination in Phase II, the company was not permitted to collect the additional revenues. The suspension of the nonretroactivity principle therefore was limited, in this case, to ` * * * the imposition of a newly established rate of return on an interim basis for the reason it [was] not collectible during that period, but in the future.'"
In essence LP&L, in requesting the surcharge, is asking this court to allow recoupment of losses resulting from its immediate implementation of an order subsequently held to be totally invalid.
On analysis our constitutional and statutory provisions regulating utility rate making, indicates clear intent that utilities bear the burden of convincing the Commission that a requested increase will be fair and reasonable, and, that utilities assume the risk of immediate implementation of an increase which may be eventually determined to be unreasonable or discriminatory with respect to any class of consumers.
A utility runs the risk of implementing a rate increase prior to its absolute finality, including the obligation to refund any excess collected if the rate is subsequently reduced and the onus of bearing any loss should the rate be ultimately deemed inadequate.
A utility is not permitted to charge higher rates in the future to offset past losses. Bebchick v. Washington Metropolitan Area Transit Commission, 158 U.S.App.D.C. 79, 485 F.2d 858 (1973). Neither may a retroactive surcharge be imposed to offset losses.
Even though losses result from an improvidently issued stay order affecting rates, utilities are not permitted to charge future fares to cover such losses. Democratic Central Committee of the District of Columbia v. Washington Metropolitan Transit Commission, 436 F.2d 233 (U.S.App. D.C.1970). Neither may a retroactive surcharge be imposed to offset such losses.
We also conclude that La.Const.1974, Article 4, Section 21(D)(4) mandates full refund of any implemented rate finally disallowed, in whole or in part.
We further conclude that if, on review, a rate is found to be too low as regards a particular customer class, any losses resulting therefrom may not be recouped by imposition of a retroactive rate or surcharge. On the other hand, if a rate is found to be excessive as to a particular class and a lower rate established, a refund must be made. La.Const. 1974, above. The utility's losses in the first instance, do not justify an illegal gain in the latter.
The judgment of the district court in the consolidated cases is affirmed at the expense of Appellant, LP&L.
AFFIRMED.
CALOGERO, J., concurs and assigns reasons.
CALOGERO, Justice, concurring.
I dissented on the central issue in this case originally. I was of the view that LP&L was entitled to the relief then sought. Nonetheless, I concur here where the same issue is more or less re-presented because the matter has already been decided in this Court.